794 F.2d 314
 UNITED STATES of America ex rel. Gilbert RIVERA, Petitioner-Appellant,
v.
Gayle FRANZEN, Director, Department of Corrections, State of
Illinois; Richard W. DeRobertis, Warden; and
Neil Hartigan, Attorney General of the
State of Illinois,
Respondents-Appellees.
 No. 85-2170.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 27, 1986.
Decided July 2, 1986.
 
 David A. Ellison, Law Student, Southern Illinois University, School of Law, Carbondale, Ill., for petitioner-appellant.
 Mark L. Rotert, Asst. Atty. Gen., Chicago, Ill., for respondents-appellees.
 Before WOOD, FLAUM and RIPPLE, Circuit Judges.
 FLAUM, Circuit Judge.
 
 
 1
 Gilbert Rivera appeals from the district court's order denying his petition for a writ of habeas corpus. The district judge ruled that while Rivera had been denied effective assistance of counsel by his lawyer's failure to investigate into the petitioner's past mental problems, Rivera had failed to establish that he was prejudiced by the violation as required by Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Petitioner argues that Strickland should not be applied retroactively and, in the alternative, that this case falls into an exception to the prejudice requirement established in United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). We do not reach these issues because we are unable to accept the district court's legal characterization of the facts as constituting ineffective assistance of counsel. Thus, on the basis that Rivera was competently represented at his trial, we affirm.
 
 I.
 
 2
 In February of 1974, petitioner Gilbert Rivera was found guilty of murder for the stabbing death of Francis Chuck Madsen in a Chicago tavern. For this crime he received a jail term of 20 to 60 years. During the early portion of his processing through the Illinois criminal justice system Rivera was represented by a public defender. However, in June of 1973 petitioner's father retained the services of Lionel Livingston, an attorney with an extensive background in criminal law. Rivera's father related the story of the crime to the attorney at Livingston's firm who conducted the "intake" interview. The district court, following an evidentiary hearing, concluded that Livingston had "no occasion to doubt that 'the notes of the interview' were other than a complete record" of what the father had said. These notes were found to contain nothing that would indicate that Rivera had a history of mental disorders or would suggest the possibility of an available insanity defense.
 
 
 3
 Within a few days after being retained, Livingston reviewed the public defender's file on the case and went to Cook County Jail to interview Rivera. At this interview Rivera handed Livingston a three-page description of his case. Livingston then conducted an extensive interview during which Rivera admitted to consuming some alcohol on the night of the murder. He did not, however, mention any past psychological problems or the use of any medications. At this meeting and all subsequent meetings, Rivera, according to the district court, appeared to be "controlled and lucid," never indicating any past psychological problems. From this the district court concluded that "[a]t no time during the petitioner's defense was Livingston aware of petitioner's psychiatric history" and that Rivera gave Livingston "no indication other than that he was and had always been free from psychological problems." The record indicates that Livingston reviewed the statements of witnesses and the police and medical reports, and competently conducted Rivera's defense based on a theory of self-defense. Following petitioner's conviction, Livingston reviewed the pre-sentence investigation report in which Rivera informed the probation officer that he had "no mental problems."
 
 
 4
 In reality Rivera suffered from depression with suicidal tendencies that are aggravated by the consumption of alcohol. He has attempted suicide three times and spent time in mental hospitals on three occasions. A discharge record at one of the hospitals described petitioner as follows:
 
 
 5
 Mr. Rivera is suffering from alcoholic psychosis. He is a very explosive personality. His anger is expressed in a very destructive way. He has had three suicide attempts. He is very violent under the influence of alcohol.
 
 
 6
 In order to control his alcoholic withdrawal Rivera was prescribed Thorazine. On the day of the murder Rivera had taken the medication as well as consuming approximately fifteen mixed drinks and "a couple of quarts of beer."
 
 
 7
 The district judge ruled that the failure to investigate into the possibility of an insanity defense and thus to discover Rivera's past history constituted ineffective assistance of counsel. He noted that, while neither Rivera nor his family ever attempted to inform Livingston of petitioner's mental disorders, the attorney made no attempt to inquire about Rivera's mental capacities. The district court held that in a case where the defendant admits to committing the act, thus making justification or lack of capacity the only defenses, the defense attorney has an obligation to investigate all available defenses. He cannot rely on his client to frame the parameters of the defense nor can he rely on his own impressions of the psychological makeup of the defendant. The court went on to deny the writ on the grounds that the petitioner had failed to establish prejudice within the meaning of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).
 
 II.
 
 8
 In order "[t]o establish that counsel's conduct was deficient, the defendant must show counsel's specific acts or omissions which, viewed from the perspective of counsel at the time of trial, fell below the standard of reasonable professional assistance." United States v. Payne, 741 F.2d 887, 891 (7th Cir.1984) (citing Strickland, 104 S.Ct. at 2065). See also United States v. Sherwood, 770 F.2d 650, 655 (7th Cir.1985) ("Deficient performance is to be judged according to an objective standard of reasonableness, giving a high degree of deference to counsel, and making every effort to evaluate the conduct from counsel's perspective at the time without the distorting effects of hindsight."); United States v. Weston, 708 F.2d 302, 306 (7th Cir.1983) (" 'grossly incompetent professional conduct' or 'representation which is in any aspect ... shockingly inferior to what may be expected of the prosecution's representation' ") (citing United States ex rel. Williams v. Twomey, 510 F.2d 634, 640 (7th Cir.1975), cert. denied, 423 U.S. 876, 96 S.Ct. 148, 46 L.Ed.2d 109 (1976)), cert. denied, 464 U.S. 962, 104 S.Ct. 397, 78 L.Ed.2d 340 (1984); United States ex rel. Feeley v. Ragen, 166 F.2d 976, 980-81 (7th Cir.1948). The question presented here is whether Mr. Livingston's failure to investigate his apparently sane client's history of mental disorders runs afoul of the Sixth Amendment standard of competency.
 
 
 9
 At the outset it must be stressed that the issue here is not whether it is advisable or "good practice" for a defense attorney to inquire as a matter of course into his client's mental capacity. Rather, the issue is whether a failure to do so amounts to a deprivation of the constitutional right to adequate representation. Clearly, failure to investigate a possible defense can amount to ineffective assistance of counsel. See Keys v. Duckworth, 761 F.2d 390, 392 (7th Cir.1985); Rogers v. Israel, 746 F.2d 1288, 1294-95 (7th Cir.1984); Harkins v. Wyrick, 552 F.2d 1308, 1313 (8th Cir.1977). Where the record establishes that counsel had reason to know, from an objective standpoint, that a possible defense, such as insanity, is available, failure to investigate fully can constitute ineffective assistance of counsel. See Mauldin v. Wainwright, 723 F.2d 799 (11th Cir.1984); Beavers v. Balkrom, 636 F.2d 114 (5th Cir.1981); Davis v. Alabama, 596 F.2d 1214 (5th Cir.1979), vacated as moot, 446 U.S. 903, 100 S.Ct. 1827, 64 L.Ed.2d 256 (1980). It is also true that where a defendant has no defense available other than diminished capacity, an attorney's failure to investigate into an insanity defense could amount to a Sixth Amendment violation. Keys, 761 F.2d at 392.
 
 
 10
 The present case involves an extension beyond previous investigation cases because the district court found that the attorney had no reason to know of Rivera's mental problems. Nor can it be said that Rivera had no defense available other than insanity; Livingston presented a defense predicated on a theory of self-defense that neither the petitioner nor the district court claimed to be inadequate. Thus the basis for the finding of inadequate representation is the theory that defense attorneys have a general obligation to explore their clients' mental capacity in every case. The Sixth Amendment imposes no such duty. An attorney is expected to adhere to at least the minimum professional standards in exercising his judgment over how to proceed with the case. The key to the above statement is the word "judgment:" a defense attorney must make decisions over what avenues of defense to pursue. These decisions, in the absence of a clear derogation from professional standards, will be respected. The Sixth Amendment does not require a defense attorney to pursue defenses that are not reasonably suggested by the apparent factual circumstances surrounding the crime charged or the subsequent demeanor and conduct of the client. While one would hope that defense lawyers would routinely reflect upon the mental capabilities of a defendant, in the absence of circumstances that would put a counsel on notice the Constitution cannot be read to mandate a specific inquiry at all times. See Saunders v. Eyman, 600 F.2d 728, 731 (9th Cir.1977) (no Sixth Amendment violation when defendant's "post-arrest conduct was not of the type that would raise any suspicions of his sanity or capacity."); Franklin v. United States, 589 F.2d 192, 194 (5th Cir.1979) (no ineffective assistance of counsel when record indicates defendant was alert and coherent); Harkins v. Wyrick, 552 F.2d 1308, 1313 (8th Cir.1977) (no ineffective assistance where counsel had no knowledge of mental problems until day of trial and where defendant understood the charges against him and cooperated in the preparation of his defense).
 
 
 11
 The district court found Livingston's work to be below standard because of a special duty to evaluate capacity, which the court based on an analogy to the court's obligation to inquire into capacity when receiving a guilty plea. This analogy is correct as far as it goes--but it does not reach this case. The issue here is a failure to pursue a line of defense, not Rivera's competency to stand trial. The district court's duty to inquire into the defendant's mental state when receiving a guilty plea is in an effort to assure the court that the defendant understands the charges against him--not to test for the availability of an insanity defense. See United States v. Fountain, 777 F.2d 351, 355 (7th Cir.1985). The record in this case indicates that Livingston satisfied himself that Rivera comprehended what charges he was facing and that Rivera, despite his psychological problems, fully comprehended his situation. Livingston did not represent an incompetent client before the state court. Under the circumstances of this case as found by the district court, Rivera's counsel's actions, while the fit subject for responsible scrutiny and critical review, do not constitute ineffective assistance of counsel.
 
 III.
 
 12
 For the foregoing reasons the judgment of the district court is AFFIRMED.