**Lavin T. BALFOUR, Petitioner–Appellant,**

v.

**J. Ronald HAWS, Respondent–Appellee.**

No. 88–3369.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 22, 1989.

Decided Dec. 22, 1989.

See also, 148 Ill.App.3d 215, 101 Ill. Dec. 223, 498 N.E.2d 547.

Paul A. Wagner, Chicago, Ill., for petitioner-appellant.

Jack Donatelli, Asst. Atty. Gen., Crim. Appeals Div., Chicago, Ill., for respondent-appellee.

Before CUMMINGS, COFFEY, and KANNE, Circuit Judges.

CUMMINGS, Circuit Judge.

Lavin T. Balfour, now serving a 30–year prison term for his Illinois murder conviction, appeals on four grounds from denial of his petition for writ of habeas corpus. Balfour was convicted following a bench trial in state court. The Appellate Court of Illinois affirmed the conviction on appeal in a published opinion. 148 Ill.App.3d 215, 101 Ill.Dec. 223, 498 N.E.2d 547 (1st Dist. 1986). In the Illinois Supreme Court, where Balfour turned next with a *pro se* petition, leave to appeal was denied without opinion. 114 Ill.2d 548, 108 Ill.Dec. 419, 508 N.E.2d 730 (1987). Balfour then commenced a *pro se* habeas corpus petition in federal district court pursuant to 28 U.S.C. § 2254, which was dismissed without prejudice. Assisted by appointed counsel, Balfour tried again with an Amended Petition and supporting Memorandum of Law. In a Memorandum Opinion and Order dated September 13, 1988, the district court denied the Amended Petition. No. 87–C–5587, 1988 WL 96561 (N.D.Ill.), 1988 U.S. Dist. LEXIS 10357 (Williams, J.) ("District Court Op.").

Balfour argues that: (1) the trial court denied Balfour due process by declining to order a clinical psychological examination of him before pronouncing sentence; (2) Balfour was denied his Sixth Amendment right to effective assistance of counsel for a variety of reasons, including failure to investigate Balfour's mental condition be-

fore trial;[1] (3) the trial court deprived Balfour of due process by failing to require the state to produce at trial several photographs of Balfour reenacting the encounter with decedent Robert Rodgers taken by police following Balfour's arrest; and (4) the evidence presented at trial was as a whole legally insufficient to support a murder conviction. For the reasons stated below we affirm the district court.

## I.

Actual and stipulated testimony given at Balfour's trial is summarized in Justice Rizzi's opinion, 101 Ill.Dec. at 226–228, 231, 498 N.E.2d at 550–552, 555 (McNamara and White, JJ., concurring), which serves as the basis of our review. See *Sumner v. Mata*, 449 U.S. 539, 545–547, 550, 101 S.Ct. 764, 768–769, 770, 66 L.Ed.2d 722. Summarizing briefly, on June 4, 1981 in an alley in Harvey, Illinois, Balfour and Rodgers became involved in an argument, which turned violent. Balfour kicked and stomped on Rodgers repeatedly; state and defense versions of the fight varied as to what other blows were delivered and who the aggressor was. Rodgers, who was intoxicated at the time, died later that day in a hospital from injuries inflicted by Balfour. After a three-day bench trial, the trial judge was convinced beyond a reasonable doubt that Balfour had murdered the victim without the justification of self-defense.

### A. *Competency*

 Trial of a criminal defendant who lacks " 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding [and] a rational as well as factual understanding of the proceedings against him' " does not satisfy

due process. *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 788, 4 L.Ed.2d 824 (*per curiam*) (quoting with approval statement of Solicitor General in confessing error). To guard against such trials, courts are responsible for considering evidence such as irrational behavior, demeanor at trial, and any medical evidence regarding the defendant's competence. *Drope v. Missouri*, 420 U.S. 162, 180, 95 S.Ct. 896, 908, 43 L.Ed.2d 103 (discussing import of *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815).

Balfour does not contend that the record would support an argument that his due process right to a fair trial was violated because he was in fact incompetent to stand trial. Nor does he argue directly that the trial court was sufficiently alerted to problems before or during trial so that the court should have ordered, *sua sponte*, a competency hearing. Instead, he argues that the trial court violated the Due Process Clause by failing to order a psychiatric evaluation once *bona fide* questions about Balfour's competency were raised in the Presentence Investigation report (PSI) and at sentencing.[2] While Balfour concedes that the record does not prove that he was incompetent to stand trial, he argues that sufficient indicia of incompetence were presented to the trial court at the time of sentencing, one month and 11 days following conviction, to trigger a due process requirement that Balfour be examined by mental health professionals and given a hearing on whatever evidence that examination produced.

The PSI stated that Balfour was taking the anti-psychotic medication Thorazine (chlorpromazine) at the time of the sentencing.[3] R. 703. It also stated that he had

---

1. One sub-issue, also addressed below, is the district court's finding that Balfour waived three separate ineffective-assistance claims by failing to raise them in state court.

2. The related question of whether defense counsel deprived Balfour of his due process rights at trial by failing to investigate his client's competency is treated separately below in the context of Balfour's ineffective assistance of counsel claims.

3. Defense counsel stated at the sentencing hearing that Balfour was also taking two other medications, but that counsel did not have accurate spellings of those drugs for the record. R. 655. Defense counsel apparently did not supplement the record to reflect what those drugs were. Balfour's brief on appeal provides no information about that representation except to refer to Balfour's "extensive treatment and use of psychotropic drugs." Defendant's Br. at 22. The Attorney General refers to the representation

been held in the psychiatric ward of Cermak Memorial Hospital in Chicago "due to psychiatric problems" for two to three months following his arrest for Rodgers' death, after which he was an outpatient for unspecified treatment for "a year and a few months." *Id.* Thus Balfour was released from the hospital more than one year before trial, though he was an outpatient until shortly before trial and continued to take at least one anti-psychotic drug during trial.

At sentencing, the following exchange occurred involving the trial judge, the assistant public defender, and the defendant:

> **THE COURT:** Do you have any additional evidence in mitigation, Mr. Pavletic?
>
> **MR. PAVLETIC:** Nothing more than [has already been] tendered to the Court.
>
> **MR. BALFOUR:** I am asking for the death penalty.
>
> **MR. PAVLETIC:** Judge, at this point I would request a Behavioral Clinic examination in terms of the competency of the defendant prior to the actual sentencing of the defendant.
>
> **THE COURT:** I don't know that his exuberance as to the penalty requested raises any bona fide doubt.
>
> . . . . . .
>
> **THE COURT:** He just says, "If I am guilty, then do what you have to do."

R. 656, 657.

The PSI reflected that Balfour had already told the probation officer before the sentencing hearing that he wished to be executed for his crime. Balfour knew that death was not a sentencing option open to the trial court. 101 Ill.Dec. at 231, 498 N.E.2d at 555.

Balfour argues in this appeal that "suggestive fragments" in the PSI, together with his "irrational behavior," raised genuine questions regarding his competency that should have been further probed by the trial judge. Defendant's Br. at 22. During oral argument, Balfour's counsel

also argued as a policy matter that habeas relief should be granted because it would not be particularly taxing to judicial economy in cases such as Balfour's to require a clinical examination to ensure that only competent defendants be required to defend themselves at trial.

■ A federal appellate court will review with a high level of deference a state court's finding that there is no *bona fide* doubt as to a defendant's competency. Such a finding is deemed to be a factual finding entitled to a presumption of correctness as long as it is "fairly supported by the record," pursuant to 28 U.S.C. § 2254(d)(8). *Maggio v. Fulford,* 462 U.S. 111, 116–118, 103 S.Ct. 2261, 2263–2264, 76 L.Ed.2d 794 (*per curiam*) (White, J., concurring in result but dissenting on application of Section 2254(d)(8) to ultimate question of competency; Brennan, Stevens, Marshall, JJ., dissenting); *Estock v. Lane,* 842 F.2d 184, 186 (7th Cir.1988) (*per curiam*); *United States ex rel. Lewis v. Lane,* 822 F.2d 703, 705 (7th Cir.1987). As mentioned above, this presumption of correctness extends to state appellate court findings, such as those contained in the Illinois Appellate Court opinion in this case. *Sumner v. Mata,* 449 U.S. 539, 545–547, 550, 101 S.Ct. 764, 768–769, 770.

■ Though incompetency was raised as an issue at a late date in this case, the Attorney General does not attempt to shoulder the extremely heavy burden of attempting to show that Balfour waived his right to have the trial court establish that he was competent to stand trial. See *Lewis,* 822 F.2d at 705–706. Nor does the government deny that a trial court must be attuned to the "wide range of manifestations and subtle nuances" that might suggest incompetency at any stage of the proceedings. See *Drope,* 420 U.S. at 180–181, 95 S.Ct. at 908. Thus if at the time of the sentencing hearing, Balfour's behavior or cumulative information in the record, in-

---

only in passing. Government's Br. at 24. Though this information might have been probative at an earlier stage of this case, our review of the trial court's decision that no bona fide doubt existed as to Balfour's competency is lim-

ited to the evidence available to the trial court at the time of its decision that no such doubt existed. *United States* ex rel. *Foster v. DeRobertis,* 741 F.2d 1007, 1011 (7th Cir.1984).

cluding factors such as hospitalization and medication histories, raised *bona fide* doubt about his ability to consult effectively with his attorney and understand the charges against him, then he would have been entitled to a hearing on his competency. *Foster*, 741 F.2d at 1011.

■■■ To challenge the procedures used in determining his competency, Balfour must present facts " 'sufficient to positively, unequivocally and clearly generate a real, substantial and legitimate doubt as to [his] mental capacity * * * to meaningfully participate and cooperate with counsel' " during his trial. *Lewis*, 822 F.2d at 706 (quoting *Bruce v. Estelle*, 483 F.2d 1031, 1043 (5th Cir.1973), certiorari denied, 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770).

Defense counsel did not raise the issue of Balfour's competence to stand trial with the trial judge, even indirectly, until the sentencing hearing. Moreover, as the state appeals court noted, at no point, even during the sentencing hearing, did defense counsel affirmatively represent to the trial court that he thought Balfour was unable to understand the proceedings or to assist in his defense. 101 Ill.Dec. at 231, 498 N.E.2d at 555. Instead, defense counsel consistently sought to establish a case of self-defense, relying almost entirely on the credibility and cogency of Balfour's extensive testimony that he acted in self-defense. Testimony of Lavin Balfour, R. 392–507.

These facts distinguish the present case from the Supreme Court's *Robinson* and *Drope* cases. As the district court in this case noted (District Court Op. at 5), the state trial court was able to observe Balfour over the course of pretrial activities, during a trial at which Balfour testified, and during the sentencing hearing—all before the suggestion was raised that Balfour was not sufficiently in contact with reality to defend himself. In *Robinson,* the defendant did not take the stand and his counsel presented four witnesses at tri-

al who testified that he was insane and did not know right from wrong. *United States v. Pate*, 345 F.2d 691, 693 (7th Cir. 1965), affirmed in part and remanded, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815. In *Drope,* the defendant's wife testified at trial that her husband needed psychiatric care and defense counsel supported a motion for continuance of the trial because his client was "not a person of sound mind and should have [had] a further psychiatric examination." 420 U.S. at 165–166, 95 S.Ct. at 900–901.

In addition to Balfour's testimony at trial, the record contains several other significant examples of conduct by Balfour to support the trial judge's conclusion that Balfour was rational and in touch with reality at the time of his trial. That conduct includes Balfour's personal request to use the law library to prepare his defense, his waiver of a jury trial, and his submission of two motions for a new trial before sentencing.[4] Balfour's trial counsel was thus able to assemble and run a credible defense at trial without raising the issue of competency. Counsel, "perhaps more than any other party or the court, is in a position to evaluate a defendant's ability to understand the proceedings...." *United States ex rel. Rivers v. Franzen*, 692 F.2d 491, 500 (7th Cir.1982), certiorari denied, 479 U.S. 991, 107 S.Ct. 588, 93 L.Ed.2d 590. The fact that counsel did not raise the issue of Balfour's competence is probative of whether *bona fide* doubt existed as to Balfour's mental condition; trial courts have no choice but to rely to some extent on the representations of counsel regarding the state of mind of their clients.

Procedures of the "fitness" provisions of the Illinois Code of Criminal Procedure are not mandated by the federal constitution and this appeal rests on federal constitutional challenges alone. Nevertheless, it is instructive that the characteristics an Illinois judge is instructed by statute to con-

---

**4.** Balfour protests that the Attorney General and the state appellate court refer to the two written motions for a new trial that Balfour presented to the court as if they had been written by Balfour himself, when in fact another inmate of the Cook County Jail claims to have been their

author. See Reply Br. at 7–8; App., Affidavit of Sylvester Green of Pontiac Correctional Center. Whoever the author of the motions was, the trial judge was able to observe Balfour reading from a portion of them and to draw whatever conclusions he could from that behavior.

sider during a fitness hearing closely match the characteristics that the trial judge in this case had a chance to observe in accepting Balfour's jury waiver, granting him library privileges, accepting his motions, and hearing his extensive testimony at trial.[5] Though the Illinois "fitness" statute requires a fitness hearing for any defendant receiving psychotropic drugs, which would include Thorazine, it also contemplates cases in which a court may find such a defendant fit to stand trial. See Ill.Rev.Stat., ch. 38, para. 104–21. See also the state appellate court's application of this provision in Balfour's case, finding as a matter of state law that even this provision did not require the trial court to order an examination. 101 Ill.Dec. at 232, 498 N.E.2d at 556.

Finally, Balfour's policy argument that the cost and delays represented by clinical examinations are negligible is best directed to the Illinois General Assembly, which has not required as a matter of state law that such examinations be available to any defendant who requests one at any stage of criminal proceedings. The Due Process Clause of the Fourteenth Amendment, the only requirement at issue here, provides a floor below which the trial and appellate courts of Illinois did not fall in this case.

### B. *Ineffective Assistance*

To prevail on any of his ineffective-assistance claims, Balfour must first show that his counsel committed serious errors that fall "outside the wide range of professionally competent assistance." *Strickland v. Washington,* 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674. This showing of deficient performance must be focused on "the reasonableness of counsel's challenged conduct on the facts of the

particular case, viewed as of the time of counsel's conduct," not based upon the benefit of hindsight. *Id.* at 690, 104 S.Ct. at 2066. Second, Balfour must show prejudice, that there is a "reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. Before reviewing the two surviving claims under this standard, it is necessary to consider the three claims raised for the first time in federal court.

■ 1. *Forfeited Claims.*—The district court found that Balfour may not press three of his ineffective-assistance claims in federal court because he failed to raise them in his direct state court appeal. District Court Op. at 10–11. Those claims are that the assistant public defender who represented him at trial: (1) failed to move for a mistrial or continuance with regard to the misplaced photographs; (2) failed to pursue certain discovery; and (3) ignored Balfour's request for a speedy trial. Balfour admits that these three claims were not included with two other claims that were advanced to the Illinois Appellate Court, namely that trial counsel: (1) failed to investigate Balfour's psychiatric history prior to trial, and (2) did not properly introduce evidence that victim Rodgers was intoxicated at the time of the encounter. Balfour argues that the five ineffective-assistance arguments urged at this point are "intertwined" and therefore components of a single, overarching claim that was pursued through direct appeal. Defendant's Br. at 12.

State court systems must generally be given a "fair opportunity" to analyze and resolve claims before habeas review, *Anderson v. Harless,* 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3, out of respect

---

5. Ill.Rev.Stat., ch. 38, para. 104–16 (1987) states in part:

(b) Subject to the rules of evidence, matters admissible on the issue of the defendant's fitness include, but are not limited to, the following:

(1) The defendant's knowledge and understanding of the charge, the proceedings, the consequences of a plea, judgment or sentence, and the functions of the participants in the trial process;

(2) The defendant's ability to observe, recollect and relate occurrences, especially those concerning the incidents alleged, and to communicate with counsel;

(3) The defendant's social behavior and abilities; orientation as to time and place; recognition of persons, places and things; and performance of motor processes.

for the "demands of comity and finality." *Engle v. Isaac,* 456 U.S. 107, 134, 102 S.Ct. 1558, 1575, 71 L.Ed.2d 783. As a matter of logic, each ineffective-assistance claim, contrary to Balfour's argument, must stand or fall on its own merit. Balfour misconstrues the requirement of *Strickland* that ineffective-assistance claims ultimately rest on "the totality of the evidence." 466 U.S. at 695, 104 S.Ct. at 2069. In teaching that courts should take a contextual approach to ineffective-assistance cases, the Supreme Court does not suggest that every ineffective-assistance claim raises all imaginable ineffective-assistance claims. Instead, courts considering the consequences of a specific claim or series of claims of ineffectiveness are to weigh the overall quality of representation provided to the defendant. A defense attorney could be constitutionally ineffective in any number of different ways; alleging two errors in professional judgment, skill, or industry does not solicit meaningful review of all potential errors. The state appellate court's favorable, one-paragraph appraisal of the trial counsel's overall performance, 101 Ill.Dec. at 233, 498 N.E.2d at 557, cannot be taken as meaningful review of all ineffective-assistance issues.

■ Nevertheless, Balfour could save the three new claims from forfeiture by establishing a justifiable "cause" for the omissions and "prejudice" resulting from them. *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594; *Page v. United States,* 884 F.2d 300, 301 (7th Cir.1989). This test applies to defaults on appeal as well as at trial. *Murray v. Carrier,* 477 U.S. 478, 489–491, 106 S.Ct. 2639, 2646–2647, 91 L.Ed.2d 397.

Ineffective assistance of counsel of a constitutional dimension may itself provide a "cause." *Carrier,* 477 U.S. at 488, 106 S.Ct. at 2645. Balfour was represented by the Cook County Public Defender's Office at the state trial level. It appears that he was represented by private, perhaps appointed, counsel on his state appeal. Balfour, now represented by yet a third attorney in these collateral proceedings, has not suggested in this appeal that his attorney for the state appeal was constitutionally ineffective. Compare *Carrier,* 477 U.S. at 483, 106 S.Ct. at 2642 (respondent alleged in district court habeas pleading that default due to ineffective assistance in direct appeal). Thus he has made no showing that his appellate counsel on direct appeal was ineffective under *Strickland* standards. Nor has Balfour demonstrated a fundamental miscarriage of justice that would obviate the cause and prejudice standard. See *Smith v. Murray,* 477 U.S. 527 at 539, 106 S.Ct. 2661 at 2668, 91 L.Ed.2d 434.

Although the inquiry need go no further, it appears that Balfour's underlying claims are far too speculative to meet the twin *Strickland* requirements of inadequate performance and prejudice. Balfour has failed to brief even minimally this Court regarding the three claims. See Defendant's Br. at 11–12 (reciting claims without explanation) and Amended Petition at 15–19. The record suggests, however, that none of the three claims—inadequate response to the misplaced photographs, incomplete discovery, prolonged proceedings—stands out as error so serious that a different course of action by trial counsel would have produced a different outcome. Two ineffective-assistance claims do, however, survive in federal court.

2. *Failure to Investigate Psychiatric History.*—Balfour argues that the record clearly shows that trial counsel was not aware of Balfour's psychiatric treatment or his use of anti-psychotic medication until the sentencing hearing despite the fact that routine attention to his client would have revealed those facts. Balfour argues that this caused trial counsel to follow an ill-fated self-defense theory when in fact Balfour should have been pleading insanity or otherwise attacking the intent element of the murder charge more vigorously.

■ Unlike the issue of competency discussed above, a state court's findings that counsel performed adequately and that any shortcomings in his representation did not prejudice the defendant's case are not findings of fact under 28 U.S.C. § 2254(d), but are instead mixed questions of law and fact

subject to independent review. *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2066.

■ As the district court pointed out (District Court Op. at 12–13), Balfour's counsel had a duty either to make an investigation or else "a reasonable decision" that investigation was unnecessary. *Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066. Balfour's trial counsel appears to have made such a reasonable decision. The record provides evidence that Balfour displayed many signs that he was sufficiently in touch with reality to understand his circumstances and to aid his attorney. As the government points out, Balfour's extraordinarily extensive history of drug abuse—apart from any medication at issue in this case—could have accounted for his hospitalization. See R. 707. Given Balfour's behavior, his attorney may have acted reasonably in concluding that the hospitalization was in connection with drug abuse, which would not necessarily have raised issues of competence to stand trial. Simply because trial counsel was moved to request a psychiatric evaluation at the sentencing hearing does not mean that counsel was previously oblivious to Balfour's mental state and use of medication. Having lost on a self-defense theory, counsel may have decided Balfour had nothing more to lose from an evaluation that might result in more favorable disposition for his client depending on the comments forthcoming from evaluators.

■ If the applicable legal standard required the courts to presume that trial counsel was ineffective, then Balfour's argument that his trial counsel took the wrong path might be tenable. In fact, however, the standard is just the reverse. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065; *United States v. Sherwood*, 770 F.2d 650, 655 (7th Cir.1985). There are many plausible readings of the record that suggest Balfour's representation meets the Sixth Amendment standard. If trial counsel knew Balfour was taking medication to stabilize his mood or thought, he would not necessarily have been remiss in proceeding to trial. See *Illinois v. Marshall*, 114 Ill. App.3d 217, 70 Ill.Dec. 91, 99, 448 N.E.2d 969, 977 (4th Dist.1983) (defendant's use of medication to maintain mental capabilities in itself irrelevant to determination of competency to stand trial). If, on the other hand, Balfour kept from his counsel the fact that he was taking Thorazine and other medications, as long as Balfour did not exhibit signs of legal incompetence, it might well have been reasonable for his attorney to focus his energies on a self-defense case. Balfour fails to overcome the "strong presumption" of effectiveness dictated by *Strickland*.

This Court rejected a claim similar to Balfour's in *United States ex rel. Rivera v. Franzen*, 794 F.2d 314 (7th Cir.1986), a case which also involved a habeas appeal of a murder conviction by a defendant who had spent time in mental hospitals, who was taking Thorazine, and who admitted killing the victim—leaving available only self-defense or intent-based defenses. The district court in that case found that although the defense attorney had had no reason to know of his client's depression with suicidal tendencies, the attorney nonetheless had failed in executing his responsibility to investigate all available defenses, including insanity. In reversing a finding of ineffective assistance of counsel, this Court stressed that

> the issue here is not whether it is advisable or "good practice" for a defense attorney to inquire as a matter of course into his client's mental capacity. Rather, the issue is whether a failure to do so amounts to a deprivation of the constitutional right to adequate representation. *Id.* at 316.

The record in *Rivera* allowed the district court to find specifically that defense counsel had no reason to question his client's grip on reality. The record in Balfour's case allows the same inference.

Because there is insufficient evidence that Balfour's trial counsel fell below the standard of representation required by the Sixth Amendment, his conduct satisfies the "performance" component of the *Strickland* test. Thus there is no reason to reach the "prejudice" component, *viz.*,

whether counsel's actions had any probable effect on the judgment.

■ 3. *Failure to Adequately Introduce Evidence of Victim's Intoxication.*— Balfour neglects to brief this Court regarding his claim that counsel failed to develop at trial evidence of Rodgers' alleged intoxication at the time of his confrontation with Balfour. See Attorney General's Br. at 16 (suggesting Balfour has dropped this claim). Relying upon his habeas plea, Amended Petition at 14–15, we concur with the district court that in light of defense counsel's multiple references to the deceased's intoxication during the trial, Balfour has not made the necessary showing of prejudice, thus failing to satisfy *Strickland's* second prong.

## C. *Missing Photographs*

■ Balfour argues that the trial court violated due process by not requiring the state to produce several photographs taken by police at the police station. The photographs allegedly showed Balfour reenacting the confrontation with Rodgers. An assistant state's attorney testified that the photographs must have been misplaced at the Harvey police station. During cross-examination, he revealed the contents of the photographs. The photographs were not merely evidence that turned up during the course of the investigation of Rodgers' death, but were instead produced by the authorities. That fact, Balfour argues, makes their disappearance an especially serious matter.

The Illinois Appellate Court appropriately found fault with the state for failing to produce the photographs and implied that had the photographs been less cumulative of other evidence presented at trial Balfour might have been entitled to a new trial due to this lapse. 101 Ill.Dec. at 234, 498 N.E.2d at 558 ("Such conduct cannot be tolerated, as it is potentially injurious to the defendant and subverts the integrity of the judicial process."). The district court joined in the reprimand. District Court Op. at 15.

The state is, of course, under a general requirement to disclose to criminal defendants favorable, material evidence. *United States v. Agurs,* 427 U.S. 97, 112, 96 S.Ct. 2392, 2401, 49 L.Ed.2d 342; *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215. The Supreme Court has addressed the need for government officials to preserve potentially exculpatory evidence in *Arizona v. Youngblood,* —— U.S. ——, 109 S.Ct. 333, 102 L.Ed.2d 281, and *California v. Trombetta,* 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413. In *Youngblood,* the state failed to preserve semen samples from the body and clothing of a child who had been kidnapped, molested, and sexually assaulted. In upholding the conviction of the defendant despite the loss of evidence, the Supreme Court held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute denial of due process of law." 109 S.Ct. at 337. *Trombetta* is even more relevant because, like Balfour's case, it was one in which government agents had destroyed evidence created as part of a criminal investigation. In *Trombetta,* police failed to preserve breath samples in drunken driving cases, preventing defendants from attempting to impeach incriminating Intoxilyzer results. 467 U.S. at 482–483, 104 S.Ct. at 2530–2531. The Court found no due process violation because it failed to find evidence of bad faith or "official animus" in the destruction of the breath samples and also because it failed to find evidence that the defendant was deprived of the use of exculpatory information not available elsewhere. 467 U.S. at 488–489, 104 S.Ct. at 2533–2534.

Here there is no showing of bad faith, nor any suggestion that Balfour was deprived of exculpatory evidence not available through his own testimony. The photographs were not shown to have been destroyed but appeared to be unavailable because misplaced. Even reading the record in the light most promising for Balfour, the state failed to produce photographs that would have demonstrated only the following: nine hours following Balfour's arrest he was able to reenact the encounter with Rodgers in a manner con-

sistent with his testimony at trial. See Reply Br. at 1–3. Balfour makes an argument that the photographs would support his claim that the assistant state's attorney who interviewed him following his arrest omitted from a written report some statements Balfour then made to the prosecutor. That is wholly unconvincing. The photographs were not "[e]vidence of how the fight began." Defendant's Br. at 8. They were, at best, evidence regarding Balfour's explanation of the fight, an explanation that he was allowed to make fully at trial. Balfour points to no inconsistency between his testimony and the information that would have been conveyed by the photographs. Failure to produce those photographs did not render the prosecution fundamentally unfair.

### D. *Sufficiency of Evidence*

The final challenge to the conviction is that the evidence was insufficient to support the verdict. Habeas corpus relief is justified if no rational trier of fact could have found proof of guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 2791, 61 L.Ed.2d 560; *Lange v. Young*, 869 F.2d 1008, 1010 (7th Cir.1989), certiorari denied *sub nom. Lange v. McCaughtry*, —— U.S. ——, 109 S.Ct. 2440, 104 L.Ed.2d 996. As explained by the Illinois Appellate Court in some detail, the trial court, sitting as trier of fact, had ample evidence before it to find Balfour guilty of each element of murder, as defined by Illinois law, to the exclusion of all reasonable doubts. 101 Ill.Dec. at 226–231, 498 N.E.2d at 550–555. Speculation that the trial judge might have reached a different result, such as a manslaughter conviction, had he heard direct evidence about Balfour's mental condition is irrelevant. The prosecution was not under a duty to rule out all readings of the evidence other than that accepted by the trier of fact in finding the defendant guilty beyond a reasonable doubt.

### II.

Because Balfour is not being held as a state prisoner "in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c)(3), the judgment of the district court is affirmed.