UNITED STATES ex rel. David Edward
MAUST, Petitioner,

v.

James O'GRADY and Spencer
Leak, Respondents.

No. 90 C 1185.

United States District Court,
N.D. Illinois, E.D.

March 28, 1991.

544

David Edward Maust, pro se.

Michael B. Brohman, Kamensky & Rubinstein, Lincolnwood, Ill., for petitioner.

Terence Madsen, Illinois Atty. General's Office, Mark Edward Repp, James E. Fitzgerald, Cook County State's Attorney's Office, Chicago, Ill., for respondents.

## MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

This matter is before this court on the parties' cross-motions for summary judgment on David Edward Maust's ("Maust") petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2241. Maust, a state pre-trial detainee, alleges that excessive delay in bringing him to trial has violated his sixth amendment right to a speedy trial, that he has been denied effective assistance of counsel in violation of his sixth amendment rights, and that the state of Illinois and the county public defender conspired to deprive him of his constitutional rights. For the following reasons, we grant the State's motion for summary judgment and we deny Maust's motion because we find that the petition is barred by procedural default.

### Background

The length of this tale serves in large part to illustrate Maust's problem. To the extent that this case hinges on the timing of the pre-trial motions and appeal in the Illinois state court, the facts are essentially uncontested.

On June 18, 1982, the State of Illinois indicted Maust on two counts of murder and concealment of a homicide. (Indictment # 82 C 4711). However, because Maust had been in custody of the state of Texas since May 28, 1982, he remained there pending resolution of the Texas charges. The Texas proceedings were concluded on August 16, 1983, and pursuant to the Illinois Interstate Detainer Act, Ill.Rev. Stat. ch. 38, § 1003–8–9, Maust requested that he be brought to Illinois where, under the Act, he should have been tried within 180 days of his request for a final disposition. He did not reach Illinois until December 21, 1983, however, and from that date to this he has remained in custody without benefit of a trial.

When he reached Illinois, a public defender was appointed. From December 21, 1983, until February 8, 1985, when the defendant moved that the court order a psychiatric examination of Maust, there were sixteen continuances—eight by agreed motion and eight on the defendant's motions. There is no indication that Maust ever spoke up in protest despite a number of court appearances. From February 8, 1985, until June 24, 1987, when Maust was declared fit to stand trial, there were numerous agreed and court-imposed continuances while Maust was evaluated and reevaluated to determine his fitness for trial.[1]

On February 11, 1985, the defendant filed motions to suppress statements and quash arrest. On May 9, 1985, the court denied the motions. On May 31, 1985, the defendant filed a supplementary motion to suppress, and after protracted hearings, the motion was denied on October 22, 1986. On December 21, 1987, Assistant Public Defender Lee Carson entered an appearance for Maust and moved for reconsideration of the October 1986 denial of the motions. On May 17, 1988, the court sustained the motion to reconsider.

The State filed its notice of appeal of the May 17, 1988 order suppressing evidence, and on June 9, 1988, the defendant filed a

1. For this period of nearly two and one half years Maust was evaluated on a regular basis by the Psychiatric Institute, and reports were made to the court. He was first in the custody of the Illinois Department of Mental Health at the Elgin Mental Health Center, but was transferred to Chester Mental Health Center on July 16, 1986, after he had managed to escape from the first facility.

motion to dismiss the indictment pursuant to the Interstate Detainer Act. A public defender was appointed to handle the state's appeal on June 20, 1988, and the court also set bond at $2,000,000.00. On June 29, 1988, the motion to dismiss the indictment was denied. At this point the matter was taken off the call pending notice of appeal. After three extensions, the State filed its appellate brief on May 22, 1989. After four extensions, the public defender filed the response brief on October 31, 1990. More than twenty continuances, either by agreement or by the court, were granted between the determination of fitness and the notice of appeal.

During these many years, the matter has been transferred to various judges and then reassigned on several occasions. Maust was represented by two different appointed counsel; on appeal, the case was handled by at least four different public defenders.

The upshot of this sorry history is that Maust has remained in detention pending trial for over seven years. He filed a *pro se* petition for a writ of *habeas corpus* with this court on March 1, 1990, alleging that his right to a speedy trial and right to effective assistance of counsel have been violated. He also alleged that the state conspired with the public defender to deny him his rights. Following this filing, the parties moved with considerable dispatch. On April 27, 1990, the State filed a motion to dismiss the petition, which was denied on May 31, 1990. On June 12, 1990, the State filed its answer asserting affirmative defenses of failure to exhaust state remedies, lawful state court orders, good faith, and qualified immunity. On September 18, 1990, the State moved for summary judgment, and on November 7, 1990, Maust filed his cross motion for summary judgment.

**2.** 28 U.S.C. § 2241(c)(3) reads:
(c) The writ of habeas corpus shall not extend to a prisoner unless—
(3) He is in custody in violation of the Constitution or laws or treaties of the United States;
. . .
When noting jurisdiction in *habeas corpus* cases, a number of courts also cite to 28 U.S.C.

*Analysis*

For defendants to prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). At this stage, we do not weigh evidence or determine the truth of asserted matters. We simply determine whether there is a genuine issue for trial, i.e., "whether a proper jury question was presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). If the nonmoving party bears "the burden of proof at trial on a dispositive issue, [however] ... the nonmoving party [is required] to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), quoting Fed.R.Civ.P. 56(e).

I. Habeas Corpus Jurisdiction

■ Before we can consider Maust's petition, we must decide whether he has fulfilled the prerequisites for invoking our *habeas corpus* jurisdiction. First, the petitioner must be held in custody, and Maust has been in custody in Illinois since 1983. While *habeas corpus* petitions are usually considered to be a postconviction remedy, in certain instances the federal courts have assumed jurisdiction over pre-trial detainees in state custody pursuant to 18 U.S.C. § 2241(c)(3).[2] *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973); *Neville v. Cavanagh*, 611 F.2d 673 (7th Cir.

§ 2254. The substantive reach of the two sections is essentially the same, although § 2254 is reserved for state court prisoners who have been convicted, while § 2241 may reach prisoners, like Maust, who have not yet been tried. *See United States ex rel. Hoover v. Franzen,* 669 F.2d 433, 442 n. 19 (7th Cir.1982).

1979), *cert. denied,* 446 U.S. 908, 100 S.Ct. 1834, 64 L.Ed.2d 260 (1980). While the federal courts have jurisdiction in such cases, they are reluctant to employ it in deference to the requirements of comity and look for "special circumstances" before interfering prior to a state conviction. *Ex parte Royall,* 117 U.S. 241, 253, 6 S.Ct. 734, 741, 29 L.Ed. 868 (1886), *quoted in Braden,* 410 U.S. at 489, 93 S.Ct. at 1126.

■ The federal courts demonstrate a strong bias in favor of giving the state courts an opportunity to review the constitutional claims first. *Picard v. Connor,* 404 U.S. 270, 276, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971); *Morrison v. Duckworth,* 898 F.2d 1298, 1300 (7th Cir.1990). In order to address the comity concerns, principles of mandatory exhaustion of state remedies have been developed. *Braden,* 410 U.S. at 490, 93 S.Ct. at 1127 ("The exhaustion doctrine is a judicially crafted instrument which reflects a careful balance between important interests of federalism and the need to preserve the writ of *habeas corpus* as a 'swift and imperative remedy in all cases of illegal restraint or confinement.'" *Secretary of State for Home Affairs v. O'Brien,* [1923] A.C. 603, 609 (H.L.), *quoted in Braden,* 410 U.S. at 490, 93 S.Ct. at 1127). Exhaustion, however, is not a jurisdictional requirement and does not go to the power of the federal court to entertain *habeas* petitions. *Echevarria v. Bell,* 579 F.2d 1022, 1025 (7th Cir.1978).

In addition, the petitioner must assert that his custody is in violation of the Constitution, laws, or treaties of the United States. Maust has invoked his sixth amendment rights to a speedy trial and effective assistance of counsel. The issue here is whether we may interfere in the pre-trial state criminal process in light of Maust's failure to bring these constitutional claims to the attention of the Illinois state court.

## II. Exhaustion of State Remedies

■ The State of Illinois relies heavily on its argument that we must grant summary judgment in its favor because of Maust's failure to raise his federal claims in the state court setting. Indeed, at no point in this long history did Maust assert his sixth amendment entitlements in Illinois court. While normally a petition for a writ of *habeas corpus* must be dismissed if the petitioner has not exhausted available state remedies regarding any of the federal claims (*Castille v. Peoples,* 489 U.S. 346, 109 S.Ct. 1056, 1059, 103 L.Ed.2d 380 (1989)), the petitioner may obtain relief nonetheless if meaningful and available state remedies did not exist. *Cruz v. Warden of Dwight Correctional Center,* 907 F.2d 665, 667 (7th Cir.1990).

■ Such a failure to exhaust ("procedural default") may also be excused if a petitioner can demonstrate both "cause and prejudice." *Murray v. Carrier,* 477 U.S. 478, 489, 106 S.Ct. 2639, 2646, 91 L.Ed.2d 397(1989); *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1979); *Mikel v. Thieret,* 887 F.2d 733, 737 (7th Cir.1989). We must examine whether Maust has adequately demonstrated cause and prejudice or the inadequacy of a state remedy on each of his constitutional claims.[3]

### A. *Right to a Speedy Trial*

■ We note at the outset that the period between February 1985 and June 1987, may not be considered in computing the time that has elapsed prior to trial. Maust has a due process right not to be tried while he is incompetent. *United States ex rel. Bilyew v. Franzen,* 842 F.2d 189, 192 (7th Cir.1988). In February 1985, a psychiatric examination was conducted on the defendant's motion, and Maust was subsequently held under observation and in treatment until he was deemed fit to stand trial in 1987. Consequently, we shall examine the delays during two periods—the

---

**3.** While Maust did move to dismiss the indictment in 1986 as a consequence of the state's failure to bring him to trial under the 180-day requirements of the Illinois Interstate Detainer Act, Ill.Rev.Stat., ch. 38 § 1003-8-9, this does not constitute an appeal to a state court for relief under the sixth amendment and cannot satisfy the exhaustion requirement.

thirteen months prior to the psychiatric examination and the period from June 1987 to the present. In the first period, discovery was being taken and in the second period the delays were occasioned by the motion to reconsider the denial of the motion to suppress evidence and the subsequent appeal by the State.

■■■ Maust relies on the principle that inordinate delay alone may excuse failure to exhaust state remedies inasmuch as the delay can render the state court remedy ineffective. *Lowe v. Duckworth*, 663 F.2d 42, 43 (7th Cir.1981) (three and one-half year delay in hearing post-conviction motions, despite petitioner's protests, is excessive); *United States ex rel. Smith v. Twomey*, 486 F.2d 736, 738 (7th Cir.1973) (no violation because appeal delays occasioned largely by petitioner's counsel). However, it is difficult to determine exactly how much delay is excessive in this pre-trial situation.

In *Wojtczak v. Fulcomer*, 800 F.2d 353 (3d Cir.1986), exhaustion was excused when no hearing has been held on the petitioner's application for post-conviction review for over two and half years. Five different attorneys were appointed to represent him and there was no evidence that he had caused the delay himself. In Maust's case the delays were occasioned by both the State and the defendant in fairly even measure. While Maust has been incarcerated for many years, the delay prior to the fitness evaluation was a matter of thirteen months and the delay following the notice of appeal has been over two years but has been occasioned by both Maust's counsel and the slow machinations of the State.

In *Brooks v. Jones*, 875 F.2d 30 (2d Cir. 1989), the court of appeals reversed the lower court's denial of the petition for failure to exhaust state remedies because the petitioner's attorney had not filed a brief after eight years. The *Brooks* court said that it was unnecessary for the petitioner to first petition for a writ of *coram nobis* because "it is perfectly apparent, ... that a prisoner's requests to the state court and requests to state-appointed counsel have been to no avail." *Id.* at 31. Here, however, Maust has not sought help from the court, although he maintains that he has attempted to appeal to his appointed counsel to no avail.

Most of the cases that apply this principle do so on the basis of the *court*'s failure to act on a petition for one reason or another. *See, e.g., Burkett v. Cunningham*, 826 F.2d 1208 (3d Cir.1987) (crowded court calendar delays sentencing over five years despite prisoner's protests); *Vail v. Estelle*, 711 F.2d 630 (5th Cir.1983) (court's five-year delay in hearing appeal after fully-briefed); *Shelton v. Heard*, 696 F.2d 1127 (5th Cir.1983) (delay of over two years in hearing appeal because of court backlog). While the court has no doubt failed to some extent in its duty to supervise the progress of Maust's case, the delays cannot be attributed solely to the court's inaction.

Maust goes on to address head-on the standard for showing a violation of the sixth amendment right to a speedy trial. Because we do not find that the delays have been so egregious that Maust has been deprived of an effective state remedy, we do not reach the merits on this issue. Because the petitioner has shown neither cause and prejudice nor that the state remedy would be ineffective, his procedural default cannot be overlooked, and we must grant summary judgment to the State and dismiss Maust's petition insofar as it attempts to argue that his right to a speedy trial has been violated.

### B. *Ineffective Assistance of Counsel*

■■■ Again, Maust has failed to raise in state court his argument that he was denied effective assistance of counsel. The requirement of the exhaustion, "which is 'principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings,' *Rose v. Lundy*, 455 U.S. 509, 518, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982), generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Murray*, 477 U.S. at

489, 106 S.Ct. at 2646.[4] However, ineffective assistance of counsel may be cause for procedural default. *Murray,* 477 U.S. at 488, 106 S.Ct. at 2645.

To show that his representation has been ineffective, the petitioner must show that his counsel's performance fell below an objective standard of reasonableness *and* that the deficiencies prejudiced the result. *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984). To show ineffective assistance of counsel, we must look to the totality of the circumstances, "ever mindful that there exists a strong presumption that counsel rendered reasonably effective assistance." *United States v. Muehlbauer,* 892 F.2d 664, 668 (7th Cir.1990). Maust argues that his appointed counsel's performance fell below an objective standard of reasonableness prior to the psychiatric examination because counsel failed to move to set bail or to dismiss pursuant to the Illinois Detainer Act. He also argues that the many continuances that his counsel either requested or agreed to further evidence his ineffectiveness. Maust also argues that he has had ineffective assistance on appeal in part because he has been assigned a number of different appellate counsel and because they have requested several extensions prior to filing the response to the State's appeal.

Again, we are at a loss to evaluate the reasons for the continuances prior to the psychiatric evaluations, although we note that the public defender shares responsibility with the state in almost equal measure for these delays. Nor can we say that such delays, while perhaps not always justified, fall "outside the wide range of professionally competent assistance." *Balfour v. Haws,* 892 F.2d 556, 562 (7th Cir. 1989), *quoting Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066. In fact, during the period while Maust was under psychiatric eval-

uation, the public defender filed a number of motions to suppress and quash arrest. Likewise, following a fitness determination, counsel moved to set bail, moved to dismiss, and successfully moved to reconsider the denial of the earlier motions to suppress and quash arrest. Consequently, Maust's primary argument appears to be that counsel was tardy in making these motions, not that they failed to do so. We cannot say on the record before us that such tardiness · falls outside the pale of effective assistance and rises to the level of a constitutional violation.

As for the delays in entering an appeal response, it is true that the process was slowed down considerably by the fact that several different appellate defenders were assigned to the case. The motions for extension argued the need for additional time because counsel had just been assigned to the case and had other pressing matters to attend to. These excuses give cold comfort to Maust, but we cannot say that the requests for extensions constitute ineffective assistance of counsel under the circumstances. As Maust has not convinced us that he has had ineffective assistance of counsel, we need not move to the prejudice prong of the *Strickland* analysis.

Consequently, we find that Maust has procedurally defaulted on the sixth amendment claim of ineffective assistance of counsel, and we must grant the State's motion for summary judgment and dismiss the petition.[5]

### Postscript

It is with some reluctance that we decline to entertain this petition for a writ of *habeas corpus* because of procedural default. While our hands are bound by the requirements of comity in this instance (not least because this is a pre-trial matter), we be-

---

**4.** A *habeas corpus* petitioner may also establish cause by showing "that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray,* 477 U.S. at 488, 106 S.Ct. at 2645. Maust has not attempted to do this.

**5.** We do not reach the conspiracy question because we have decided that procedural default on the constitutional questions prevents our review of the petition. However, we do note that these allegations will need to carry more flesh if Maust hopes to convince an Illinois court that the public defender conspired with the State to deprive him of his constitutional rights.

lieve that the State's and appointed counsels' behavior has endangered Maust's constitutional rights, and we encourage Maust to take his grievances to a state forum. Maust has not convinced us that we should excuse his failure to exhaust, but we feel that the combination of events that has resulted in Maust's incarceration without benefit of trial should be a matter for grave concern to the Illinois courts.

The wheels of justice have been moving on Maust's behalf, albeit at a snail's pace. The pending appeal is perhaps potentially dispositive of the case, and we trust that the attorneys and the court will move quickly to resolve this matter.

### Conclusion

For the foregoing reasons, we grant the State's motion for summary judgment and deny the petitioner's motion. We dismiss the petition for a writ of *habeas corpus* pursuant to U.S.C. § 2241 because of procedural default.