Lourenzy **STONE** aka Lorenzo L. Stone–Bey, Petitioner,

v.

Robert **FARLEY**, and Indiana Attorney General, Respondents.

Civ. No. 3:93cv0778 AS.

United States District Court, N.D. Indiana, South Bend Division.

Feb. 23, 1995.

John Pinnow, Greenwood, IN, for petitioner.

Laurel Twinney, Thomas D. Quigley, Indianapolis, IN, for respondents.

### *MEMORANDUM AND ORDER*

ALLEN SHARP, Chief Judge.

### I. PROCEDURAL HISTORY

The above-named Petitioner was convicted in the Lake Superior Court, Criminal Division, Crown Point, Indiana, of first degree premeditated murder and first degree murder in the commission of a robbery. Judge James Clement of that court imposed a life sentence. A direct appeal was taken to the Supreme Court of Indiana, and that court, unanimously, speaking through Justice De-Bruler, affirmed the aforesaid convictions as

indicated in the reported decision of *Stone v. State,* 268 Ind. 672, 377 N.E.2d 1372 (1978).

The petitioner then returned to Lake Superior Court in 1986, and sought post-conviction relief. While that petition was pending, he also petitioned this court for relief under 28 U.S.C. § 2254. This court dismissed without prejudice his petition for relief under § 2254, as indicated in *Stone–Bey v. Duckworth,* No. S87–560 (N.D.Ind. November 6, 1987). Not satisfied with this court's decision, an appeal was taᴋᴇɴ to the Court of Appeals for the Seventh Circuit, which dismissed the appeal without prejudice in *Stone–Bey v. Duckworth,* No. 87–2891 (7th Cir. April 4, 1988). The state post-conviction court conducted a hearing in February, 1989, and issued appropriate findings and decision on June 20, 1989. That decision was appealed to the Supreme Court of Indiana, and that court, speaking through Justice Givan, affirmed the denial of post-conviction relief as reported in *Stone v. State,* 587 N.E.2d 672 (Ind.1992). This time, Justice Dickson dissented without opinion and Justice Krahulik concurred in result without separate opinion.

On November 8, 1993, *pro se* petitioner, Lourenzy Stone, aka Lorenzo L. Stone–Bey, (hereinafter "Petitioner") an inmate at the Indiana State Prison in Michigan City, Indiana, filed a petition seeking relief under 28 U.S.C. § 2254. Petitioner subsequently obtained the services of counsel and at this stage is currently being represented by John Pinnow. The return filed by the respondents on August 8, 1994, demonstrates the necessary compliance with *Lewis v. Faulkner,* 689 F.2d 100 (7th Cir.1982). Petitioner's counsel filed a Traverse on August 22, 1994. The state court record has been filed and examined pursuant to the mandates of *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

## II. ISSUES

■ This petitioner raises a plethora of claims here (thirteen). Many of them were not presented in the first instance to any court in the State of Indiana. It is necessary for a petitioner under § 2254 to present claims in the first instance to the state court. *See Castille v. Peoples,* 489 U.S. 346, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989). The claims may be grouped as follows:

1. Illegal arrest.
2. Confession that was
 a. involuntary.
 b. the fruit of an unlawful arrest and detention.
 c. obtained in violation of rights to consult family and counsel; and
 d. obtained without advisement of rights against self-incrimination and to be released from unlawful custody.
3. Delay in probable cause hearing.
4. Unduly suggestive lineup.
5. Lack of jury instruction regarding confessions.
6. Lack of valid waiver of rights to counsel and to consult with parents.
7. Denial of Stone's right to testify in his own behalf.
8. Admission of statement of codefendant Williams.
9. Admission of transcript of accomplice Elliot James' guilty plea.
10. Erroneous jury instruction regarding murder in the perpetration of a robbery.
11. Assistance of trial counsel.
12. Assistance of appellate counsel.
13. Assistance of post-conviction counsel.

Of this fairly long list of claims, several were not in any significant or relevant way presented in the first instance to any court in Indiana. In *Henderson v. Thieret,* 859 F.2d 492, 496 (7th Cir.1988), *cert. denied,* 490 U.S. 1009, 109 S.Ct. 1648, 104 L.Ed.2d 163 (1989), the Seventh Circuit, speaking through Judge Kanne, explained the initial considerations necessary to the evaluation of habeas petitions:

> Before considering a petition for habeas corpus on its merits, a district court must make two inquiries—whether the petitioner exhausted all available state remedies and whether the petitioner raised all his claims during the course of the state proceedings. If the answer to either of these inquiries is 'no,' the petition is barred ei-

ther for failure to exhaust state remedies or for a procedural default.

*Id.*

Procedural default occurs when a claim could have been but was not presented to the state court and cannot, at the time that the federal court reviews the habeas petition, be presented to the state court. Without a showing of "good cause" for the default and prejudice to the petitioner, an issue that could have been, but was not presented to the state court, cannot be addressed in federal habeas corpus proceedings

*Resnover v. Clark,* 965 F.2d 1453, 1458 (7th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2935, 124 L.Ed.2d 685 (1993) (*citing Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977)). *See also Norris v. United States,* 687 F.2d 899, 901 (7th Cir.1982).

■ Because petitioner failed to present many of his above claims to the state court, and because he has failed to prove cause and prejudice for those defaults, only the following issues are before this court:

A. Petitioner's alleged illegal arrest;

B. The admission of accomplice Elliot James' out-of-court statements;

C. Petitioner's confession as a juvenile;

D. The admission of evidence regarding Petitioner's lineup;

E. The admission of statements of co-defendant Williams;

F. The jury instruction regarding murder in the perpetration of a robbery;

G. The assistance of trial counsel, assistance of appellate counsel, and assistance of post-conviction counsel.

## III. FACTS

Affirming the trial court on Petitioner's direct appeal, the Indiana Supreme Court found the facts as follows:

The evidentiary facts are simple and indicate that on the night of February 25, 1976, appellant, together with four other men, James, Barber, Rogers and Williams went to Mona's Lounge in Gary, Indiana at 10:00 p.m. At least two of he group were armed with handguns. Four of the men went in and one of them announced that it was a stickup and ordered the customers present to get on the floor. A customer David Clay was armed and drew his weapon in self-defense. A fire fight ensued during which Clay was shot and killed and one of the gunmen wounded. The men then fled. The five men were jointly indicted. James entered a plea agreement and became a witness for the State. Appellant, together with Barber, Rogers and Williams were tried jointly and convicted. At their trial appellant's confession and the confession of Williams were admitted in redacted form. The record of the James' guilty plea proceeding was admitted in evidence when he refused on the stand at the trial to give evidence against appellant and the others being tried.

Certainly, this court has a right under 28 U.S.C. § 2254(d) to presume the factual findings of the highest court of Indiana as presumptively correct. Justice Stewart, speaking for the Supreme Court of the United States in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), stated:

A judgment by a state appellate court rejecting a challenge to evidentiary sufficiency is of course entitled to deference by the federal courts, as is any judgment affirming a criminal conviction. But Congress in § 2254 has selected the federal district courts as precisely the forums that are responsible for determining whether state convictions have been secured in accord with federal constitutional law. The federal habeas corpus statute presumes the norm of a fair trial in the state court and adequate state postconviction remedies to redress possible error. See 28 U.S.C. § 2254(b), (d). What it does not presume is that these state proceedings will always be without error in the constitutional sense. The duty of a federal habeas corpus court to appraise a claim that constitutional error did occur—reflecting as it does the belief that the "finality" of a deprivation of liberty through the invocation of the criminal sanction is simply not to be achieved at the expense of a constitutional right—is not one that can be so lightly abjured.

*Id.* at 323, 99 S.Ct. at 2791. The Supreme Court in *Jackson* held:

> We hold that in a challenge to a conviction brought under 28 U.S.C. § 2254—if the settled procedural prerequisites for such a claim have otherwise been satisfied—the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof beyond a reasonable doubt.

*Id.* (footnote omitted). *See also Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981); *Dooley v. Duckworth,* 832 F.2d 445 (7th Cir.1987), *cert. denied,* 485 U.S. 967, 108 S.Ct. 1239, 99 L.Ed.2d 438 (1988); *United States ex rel. Haywood v. O'Leary,* 827 F.2d 52 (7th Cir.1987); *Bryan v. Warden, Indiana State Reformatory,* 820 F.2d 217 (7th Cir.1987), *cert. denied,* 484 U.S. 867, 108 S.Ct. 190, 98 L.Ed.2d 142 (1987); *Shepard v. Lane,* 818 F.2d 615 (7th Cir.), *cert. denied,* 484 U.S. 929, 108 S.Ct. 296, 98 L.Ed.2d 256 (1987); and *Perri v. Director, Department of Corrections,* 817 F.2d 448 (7th Cir.), *cert. denied,* 484 U.S. 843, 108 S.Ct. 135, 98 L.Ed.2d 92 (1987).

■ Following *Jackson, supra,* there is an increasingly long line of cases in this circuit that suggest that the facts found by the highest court of a state are presumed correct. *See e.g., Andersen v. Thieret,* 903 F.2d 526, 531 (7th Cir.1990). This court finds that the evidence is sufficient to sustain the conviction. Admitted against Petitioner were his own statements, statements of a witness, and statements of two accomplices. Even if some of the evidence was improperly admitted (as Petitioner argues), for the reasons set forth below, this court finds that the evidence presented to the jury was such that a rational trier of fact could readily have found the Petitioner guilty beyond a reasonable doubt of first degree premeditated murder and first degree murder in the commission of a robbery.

## IV. DISCUSSION

### A. PETITIONER'S ARREST

PROBABLE CAUSE

■ Assuming without deciding that Petitioner properly preserved this issue, Petition-er is hard pressed to cause this court in this § 2254 proceeding to revisit the question of warrantless arrest and the alleged lack of probable cause therefor. Probable cause is normally a Fourth Amendment question, and *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) instructed that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at this trial." *Id.* at 494, 96 S.Ct. at 3052. Petitioner received a "full and fair opportunity" as evidenced by Justice Givan's opinion in *Stone v. State,* 587 N.E.2d 672, 674 (Ind.1992).

### EFFECTIVENESS OF COUNSEL IN CONTEXT TO THE ARREST

#### *Trial Counsel*

■ In *Kimmelman v. Morrison,* 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) the United States Supreme Court held that *Stone v. Powell* 's restrictions did not apply to challenges that counsel was ineffective for failing to preserve and argue a Fourth Amendment claim. The Court remarked, "we reject the argument that *Stone [v. Powell* ]'s limitations on federal habeas review of Fourth Amendment claim should be extended to Sixth Amendment ineffective-assistance-of-counsel claims which are founded primarily on incompetent representation with respect to a Fourth Amendment issue." *Id.* at 382–83, 106 S.Ct. at 2587. "[F]ederal courts may grant habeas relief in appropriate cases regardless of the nature of the underlying attorney error." *Id.* In *Kimmelman,* evidence was seized allegedly in violation of the Fourth Amendment. The defendant's trial counsel failed to request discovery and, as a result, missed the deadline for making a motion to suppress the very damaging evidence. Here, unlike the *Kimmelman* case, Petitioner's trial counsel moved for discovery and argued that the "poisoned fruit" of the illegal arrest should be suppressed. (R. at 38, 43, 44, 193, 248).

The Indiana Supreme Court in *Stone v. State,* 587 N.E.2d at 674, found no ineffective assistance of trial counsel with respect to Fourth Amendment concerns. This court's independent examination of the record finds the Indiana Supreme Court's reasoning was proper under both *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *Lockhart v. Fretwell,* —— U.S. ——, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). Finally, since the Supreme Court of Indiana did consider this issue, this court will not treat it as one which is precluded by procedural default, but rather one in which there is no merit.

### Appellate Counsel

■ There is no doubt that *Kimmelman, Strickland,* and *Lockhart* also apply to appellate counsel. *Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). In *Gray v. Greer,* 800 F.2d 644 (7th Cir.1985), the Seventh Circuit, speaking through Judge Flaum, outlined the parameters for the consideration of the ineffective appellate counsel:

> The *Strickland* standard envisions a two-prong analysis. First, counsel's performance must have been deficient, and second, the deficiency must have prejudiced the defense. *Id.* Had appellate counsel failed to raise a significant and obvious issue, the failure could be viewed as deficient performance. If an issue which was not raised may have resulted in a reversal of the conviction, or an order for a new trial, the failure was prejudicial. Were it legitimate to dismiss a claim of ineffective assistance of counsel on appeal solely because we found it improper to review appellate counsel's choice of issues, the right to effective assistance of counsel would be worthless. When a claim of ineffective assistance of counsel is based on failure to raise viable issues, the district court must examine the trial court record to determine whether appellate counsel failed to present significant and obvious issues on appeal. Significant issues which could have been raised should then be compared to those which were raised. Generally, only when ignored issues are clearly stronger than those presented, will the

presumption of effective assistance of counsel be overcome.

*Id.* at 646. *Lockhart, supra,* clarifies the meaning of prejudice by requiring Petitioner to demonstrate that his counsel's errors are so serious so as to render the result of the trial unreliable or the proceeding fundamentally unfair, and not merely that the outcome would have been different. *Lockhart,* —— U.S. at ——, 113 S.Ct. at 844. *Lockhart* also clearly indicates that a court is not restricted to contemporaneous assessment when reviewing whether or not counsel's deficient conduct was prejudicial. *Id.*

In his appeal brief to the Indiana Supreme Court, petitioner's appellate counsel, James Stanton raised three issues:

1). Whether the trial court was in error in admitting into evidence the confession of the defendant, Stone, who although a juvenile, was not afforded the opportunity to consult with his parents before giving the confession.

2). Whether the trial court was in error in admitting into evidence the confession of the co-defendant, Williams.

3). Whether the trial court was in error in admitting into evidence the entire record of the guilty plea proceedings of the witness, James.

In his Statement of the Case section, Mr. Stanton points out that the police admitted that they had insufficient evidence to arrest the Petitioner; yet Mr. Stanton failed to advance that admission as an argument for reversal. Mr. Stanton only argued it was error to admit Petitioner's confession in the absence of parental consultation. Curiously, in its findings of facts, the trial court on post-conviction relief found that Mr. Stanton did argue that petitioner's confession was the product of an unlawful arrest and detention (Vol. 1, Supp. R. at 249–50). An examination of that Indiana Supreme Court opinion (*Stone v. State,* 377 N.E.2d 1372) reveals that the issue of probable cause was never discussed, thereby making it more likely that Mr. Stanton did not advance a lack of probable cause argument on Petitioner's direct appeal.

Appellate counsel's failure to raise the significant and obvious issue of lack of probable

cause to arrest constituted deficient performance. The next question is whether it prejudiced the Petitioner's defense. Normally, this court would be forced to hypothesize whether or not the appeals court (in this case the Indiana Supreme Court) would have acted differently had the issue been briefed. In this case, such supposition is unnecessary as this court merely has to examine the briefs and reasoning of the Indiana Supreme Court when they later considered Petitioner's arrest on post-conviction relief. The issue of lack of probable cause was thoroughly briefed and argued before the Indiana Supreme Court as part of Petitioner's post-conviction relief claim. *Stone v. State*, 587 N.E.2d 672 (1992). The Indiana Supreme Court disagreed that Petitioner was arrested without probable cause. "[T]here is ample evidence in this record that because of the wounding of Rogers, police officers were able to determine that he in fact had participated in the robbery and that they were justified in questioning his known associates." *Id.* at 674. Thus, this court can not consider the effect of a potential objection to the alleged lack of probable cause since the Indiana Supreme Court considered the issue meritless under the current governing law. *Lockhart,* —— U.S. at ——, 113 S.Ct. at 845, (O'Conner, J., dissenting). This court is restricted by *Stone v. Powell, supra,* from ruling on whether or not probable cause actually existed.[1] In consideration of all the foregoing, this court finds that Petitioner has no claim as to ineffective assistance of appellate counsel.

## B. STATEMENTS OF ELLIOT JAMES

Elliot James made two out of court statements. Both were admitted into the record at Petitioner's trial as substantive and impeaching evidence. The first statement was made on his initial arrest on February 26, 1976. The second was made at his guilty plea on July 20, 1976. On February 26, 1976, after being properly *"Mirandized"*, Elliot James responded to the police's inquiry "Tell us in your own words what happened at Mona's Lounge, 1537 Broadway, Monday, February 23, 1976, at approximately 9:55 p.m., and also the circumstances leading up to 9:55 p.m." with the following words:

> One of my friends had a little mix-up, and he needed some money. So Lorenzo Stone came up with the idea to stick-up Mona's. So everybody agreed to it and sat down and talked about it for awhile. Then they passed out the guns, and we left and walked on over there. When we got to Mona's, Lorenzo Stone and Roselle Barber looked inside of Mona's to see how many people were in there. They had already said that seeing as how me and Rozelle didn't have any guns, we would go in after they had the people on the floor and get the money. Rozelle and myself were supposed to wait for five minutes before we went inside of Mona's. We waited for five minutes, and I started to walk in first, and Rozelle was behind me. Well, there are two doors to get in Mona's, and as soon as I opened the second door, I heard all kinds of shooting, and I didn't go inside. I turned around and ran; I didn't see Rozelle. I turned around and saw that Bobo ran out, then Goon, and then Lorenzo was the last one to leave. Bobo was yelling to Lorenzo, 'You got me shot, you got me shot.' When we got over to Mass, we started to walk. Lorenzo was saying to us, 'I think I killed him, I think I killed him.'" Lorenzo said that when he started to get the money, he saw that somebody pulled a gun and he said that he didn't take no chances and he just fired. We talked about it until we got to Ed Barber's house, and then I had checked the guns and I saw that the only guns that were shot were the ones that Lorenzo and Bobo were holding. Bobo was still crying that he had got shot, and then Lorenzo, Bobo, and Goon got a lift over to a crib on Tyler. I then left and caught a ride home and then Bobo, Goon, and Lorenzo got a lift to LaDonna's house. That was it for the day.

---

1. This court has taken the trouble to examine *Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968) but because this is a collateral review under § 2254, its result and reasoning are inapplicable here.

Q: In the beginning of the story you said that one of your friends had a little mix-up and needed some money. Who was that?

A: Goon.

Q: Who all agreed to stick-up Mona's?

A: Everybody.

Q: Now everyone, do you mean Rozelle Barber, Johnny Goon Williams, Lorenzo Stone, Ira Bobo Rogers, and yourself?

A: Yes.

\* \* \*.

(R. at 745–49.)

At his guilty plea hearing James testified under oath that:

On that date the 23rd, four other guys that were Rozelle Barber, Lorenzo Stone, Ira Rogers, and Johnny Williams, and myself, we went to the place Mona's Lounge in order to rob it. So Rozelle Barber stayed outside as a lookout. It was his job to come in and get the money. All right, at that time, the other four and myself, you know, the other three and myself, walked inside the place to rob it. Announced a stickup. And David Clay was sitting, I think about three—about three stools farther down the bar. So where he was Lorenzo Stone walk straight into the back. And I walked in and went up to the bar. And the other two fellows close to the wall. We could see just about everyone and we announced a stick-up. Everybody was supposed to get on the floor, but David Clay, he didn't lay on the floor. He tried to stop the robbery. And when he did not, the shooting erupted. I had jumped across the bar on the other side of the bar, shooting erupted so everybody running out of the place. And I turned around and tried to run out of the place. Lorenzo Stone was coming back shooting and I ran out the place too. We ran there over to

another fellow's house and that's when we the next day the man got killed that's it.

Q: Did you shoot David Clay?

A: No I did not.

Q: Do you know who did?

A: Can't honestly say. I was inside the place; I was on the other side of the bar. I jumped the counter to get the money. As soon as I was on the other side of the counter, the shooting erupted. Back over the counter. Then I went out the door and then Lorenzo Stone ran out the back of the place saying, "I think I killed him, I think I killed him, I think I killed him."

(R. at 657–8).

 It is asserted that the state trial improperly admitted into evidence the above statements. Again, Justice DeBruler at pages 1374–75 dealt with this issue extensively, and held that such was not erroneous and admissible as substantive evidence under *Patterson v. State*, 263 Ind. 55, 324 N.E.2d 482 (1975). *See also, Jackson v. State*, 485 N.E.2d 144 (Ind.App.1985).[2] This court reiterates that it is not a super appeals court for state law questions. State law hearsay stricture against substantive use at trial of a witness's prior statements are not constitutionally mandated. *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), (cited in, *United States v. Gregory*, 472 F.2d 484 (5th Cir.1973)).

 To the extent that hearsay and 6th Amendment considerations are relevant, James' out-of-court statements were still properly admitted. Mr. James was indeed in court, under oath, on the witness stand, and subject to cross-examination. Fundamentally, those are the values that are protected by both hearsay concerns and the confrontation clause of the Sixth Amendment.

2. *Jackson* reaffirmed the *Patterson* doctrine of allowing relevant out-of-court statements as substantive evidence if the declarant is present and subject to cross examination. *Jackson* specifically cited the Petitioner's previous Supreme Court case, *Stone v. State*, 268 Ind. 672, 377 N.E.2d 1372 (1978) for the proposition that it is proper to admit out-of-court statements as substantive

evidence if the declarant admits making the statement but denies or professes no recollection of the particulars of the statement. Here, the declarant James admits making both statements (R. at 621). The fact that he later changed his mind about the veracity of those statements had no effect upon the decision of the Indiana Supreme Court.

## C. PETITIONER'S CONFESSION AND JUVENILE RIGHTS DURING INTERROGATION

 When first taken into custody, Petitioner deceived the police as to his age. Petitioner informed the interrogating officers that he was nineteen years old, presumably so he would be placed in the adult holding areas where smoking was permitted (R. at 498,500). The interrogating police officers cross-checked petitioner's statement against past arrest warrants which also indicated that petitioner was nineteen years old (R. at 205–6). Satisfied that they were dealing with an adult, the police proceeded to comply with the requirements for adult waiver under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and eventually obtained two confessions.[3] Prior to trial, appellant moved to suppress his confessions alleging they were invalid because he was treated as an adult instead of a juvenile (Trial Record "TR" at 4.). The trial judge denied the motion to suppress and admitted the confessions into evidence. Petitioner argues it was constitutional error to admit his

---

3. Following are the relevant portions of Petitioner's confessions:

FIRST STATEMENT:

This is a statement given by Lorenzo Stone, MB, 19, in the Detective Bureau of the Gary, Indiana Police Department. Statement made 2:26 p.m. February, 26th, 1976. Questions asked by Detective W. Arnold and K. Komenich and typed by K. Komenich.

Q: What is your true name, age, address, and telephone number?

A: Lorenzo Stone, 19, 1532 Pennsylvania, 883–9405.

Q: Where and when were your born?

A: Gary, Indiana, September 13, 1956.

\*　\*　\*　\*　\*　\*

Q: Do you realize that this statement may be used in a case of criminal trial?

A: Yes.

Q: Have you already read and signed a separate sheet of paper advising you of your rights and do you understand them?

A: Ah-huh.

\*　\*　\*　\*　\*　\*

Q: Tell me in your own words what happened Monday, February 23, 1976 at Mona's Lounge, 1537 Broadway, Gary Indiana, at approximately 9:55 p.m.

A: I was sitting in the back at the last table of Mona's Lounge with Geronimo and his girl. I was talking to Geronimo about 10 dollars he owed me. Three gun men came into Mona's, one was standing by the record player, one was standing by the door, and the other one went straight to the back. The dude in the back announced everybody on the floor, this is a stick-up. Then they started shooting. Then they ran out of the door. That was it, and I left about a couple of minutes later.

\*　\*　\*　\*　\*　\*

Q: Did you see any of the gunmen shoot their guns?

A: I seen one that was the dude in the back where I was at.

\*　\*　\*　\*　\*　\*

Q: If you were asked these questions at a later time would your answers be the same?

A: Yes.

SECOND STATEMENT

Now, a second statement taken from Lorenzo Stone again at the Gary Police Department on the 25th day of February 1976 at 3:40 o'clock p.m.

Q: Did you sign a paper advising you of your rights and did you give us a statement earlier today?

A: Yes.

Q: We now show your Miranda Waiver form with your signature and three typewritten pages with your signatures on the waiver and your initials on two pages of the statement and your signature on the last page and ask you if it is what you initialed and signed earlier?

A: Yes.

Q: Recalling February 23, 1976 at approximately 9:55 p.m. at 1537 Broadway, tell us in your own words what happened.

A: We walked in Mona's Lounge. I went straight to the back; I stood up. James Elliot stayed up front. That is when James said this is a stick-up and I said everybody on the floor and everybody got on the floor. The next thing I knew Elliot James started shooting and then -Blank- shot. Then -Blank- started shooting and I was in the back and I shot one time. Then we ran out and that is it.

Q: You said James Elliot and Elliot James, what is the correct name?

A: Elliot James.

Q: Who planned the robbery?

A: Nobody.

Q: Why did all of you walk in?

A: To stick it up; we needed the money.

Q: Who shot the man at the front of the bar who got killed?

A: Well, I couldn't tell. Elliot was by the bar and -Blank- was facing the bar.

\*　\*　\*　\*　\*　\*

Q: Where did you get the gun before the robbery?

A: I bought it from a junkie.

\*　\*　\*　\*　\*　\*

Q: What kind of gun did you have?

A: I had a 38 short.

\* \* \* (R. 500–507).

confessions because he failed to receive "juvenile" treatment.

Justice DeBruler dealt at great length with this issue regarding the age of this petitioner and the requirement, if there be one, that he be permitted to confer with an adult family member. *Stone v. State,* 268 Ind. 672, 377 N.E.2d 1372, 1373–74 (1978). This may be a case where state law is more generous in protecting a constitutional right than the Supreme Court of the United States has been in general under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).[4] The state law and the question appears to be embodied in *Lewis v. State,* 259 Ind. 431, 288 N.E.2d 138 (1972), which held:

> We hold therefore that a juvenile's statement or confession cannot be used against him at a subsequent trial or hearing unless both he and his parents or guardian were informed of his rights to an attorney, and to remain silent. Furthermore, the child must be given an opportunity to consult with his parents, guardian or an attorney representing the juvenile as to whether or not he wishes to waive those rights. After such consultation the child may waive his rights if he so chooses provided of course that there are no elements of coercion, force or inducement present. This approach has been advocated by several commissions who have studied this area and we believe it represents the best solution to a difficult and re-occurring problem.

In rationalizing Stone's circumstances under its' *Lewis* decision, the Indiana Supreme Court held that:

> where the police do not flaunt the rule of *Lewis,* or seek to circumvent its requirements, but make good faith and diligent effort to implement it in making the determination of the age of the suspect, and are frustrated in such effort by the misstatement of the suspect as to age, then and in that event, ... the requirements of *Lewis* will be deemed satisfied.

It needs to be emphasized that this court does not sit as a trier de novo in state court criminal proceedings and does not sit

as a court of general common law review. The collateral review that is envisioned by § 2254 focuses on violations of the federal Constitution. *See Bell v. Duckworth,* 861 F.2d 169 (7th Cir.1988), *cert. den.,* 489 U.S. 1088, 109 S.Ct. 1552, 103 L.Ed.2d 855 (1989). This court does not sit merely to determine questions of state law. *See Estelle v. McGuire,* 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). As a general proposition, the progeny of *Miranda* does not per se require a minor to have conferred with an adult family member before that minor's confession would be admissible in a criminal trial in which that minor was charged with a felony offense. *See United States ex rel. Riley v. Franzen,* 653 F.2d 1153 (7th Cir.), *cert. denied,* 454 U.S. 1067, 102 S.Ct. 617, 70 L.Ed.2d 602 (1981).

This court agrees with the rationale of Indiana Supreme Court. Although the Attorney General invites this court to use *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), to spite the guns of this petitioner in regard to this issue, it seems that the reasoning and result of Justice DeBruler in 377 N.E.2d at 1372–74 is altogether consistent with a reasoned application of the values in *Miranda.* Moreover, *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) is not applicable here. Gualt, a 15 year old adolescent, was found guilty of "[using] vulgar, abusive or obscene language ... in the presence or hearing of any woman or child." Gault challenged the adequacy of the juvenile process under which he was adjudged guilty. One of the challenges involved a failure to adequately notify his parents of his incarceration. Here, Petitioner seeks to compare the fact that his parents were not present during his interrogation with Gualt's predicament. However, unlike Gualt's situation, Indiana's juvenile proceedings do provide for adequate notice and involvement of a juvenile's parents or guardian. Unlike Gault, it was Petitioner's own self-serving statements, not an inadequate process that prevented Petitioner from being placed in the juvenile system. The Indiana

---

4. For the larger view of this subject *See,* Kermit L. Hall, "Of Floors and Ceilings, The New Federalism and State Bills of Rights", *The Bill of* *Rights in Modern America* (Bodenhamer & Ely eds. Ind. U. Press 1993).

Supreme Court struck a careful balance between recognizing the rights of juveniles to receive due process and the right of police to reasonably rely upon their records that corroborate the statements of a juvenile. Thus, this court finds no Constitutional violation with respect to his rights as a juvenile during interrogation.

## D. LINEUP EVIDENCE AND TESTIMONY.

■ Petitioner's lineup argument covers two issues. First, Petitioner alleges his lineup attire was unduly suggestive and thus any testimony stemming from his lineup was highly prejudicial and inadmissible. Second, Petitioner also argues that his counsel was ineffective for failing to object to the lineup testimony. As to his first argument, Petitioner failed to argue on direct appeal and on his post-conviction appeal that the lineup itself was unduly suggestive. A "prisoner who fails to seek leave to present to the highest state court the constitutional objections that form the basis of his federal habeas petition waives those objections unless he can show cause for his default and prejudice from the alleged constitutional infirmities." *Nutall v. Greer*, 764 F.2d 462, 464 (7th Cir.1985). Petitioner did argue the second issue to the Indiana Courts, that his counsel was ineffective in failing to object to the line-up. Petitioner thus preserved the lineup question as an effectiveness of counsel issue for this habeas review. Petitioner's August 22, 1994 Traverse also admits that his line-up claim was only preserved as an ineffective assistance of counsel issue (Traverse at p. 2) Thus, this court finds that Petitioner's failure to raise the suggestiveness of the line-up directly to the Indiana courts amounts to a procedural default of that issue in this court. This court now addresses the alleged ineffective assistance of counsel as to Petitioner's lineup.

The Petitioner's line-up issue arose during the testimony of John Means, a patron of Mona's Lounge on the night of the robbery and a witness for the prosecution. At the outset, this court notes that Mr. Means' in court identification may very well make this entire issue moot. Mr. Means identified petitioner at the trial by placing his hand on Petitioner's shoulder (R. 416). This was done without objection *(Id.)*. Mr. Means testified that his identification was based upon an independent recollection and not upon his viewing of the Petitioner at the lineup. Whether or not Mr. Means really did have an independent recollection was an issue for the jury to decide. At any rate, this court also addresses Petitioner's claim that his counsel was ineffective by failing to prevent the admission of Mr. Means' out-of-court statements.

Mr. Means also testified that he had identified Petitioner at a lineup on February 26, 1976. (R. 418). At trial the State sought to introduce a picture of the lineup. The picture portrayed Petitioner as well as several of his codefendant's in a police lineup. Petitioner's counsel objected to the admission of a photograph of the lineup because it allegedly created an inference of guilt by association. Petitioner's counsel argued:

> [T]he only purpose that the State has in introducing that lineup is to, of course, prejudice the rights of the Defendant. No valid reason for introducing that into evidence. The witness has testified that he knew of the identity of the Defendant independent of the lineup, in fact, merely reinforced of the defendant. As a result of the fact that particular photograph has on the back a list of the names of those people who are portrayed along with numbers and included in the list of these individuals is Elliot James.

(R. 429). Petitioner's counsel was apparently successful because a picture of the lineup does not appear in the record.

Petitioner argues that keeping the photograph out was insufficient. Petitioner also argues that his counsel should have kept out any identification testimony resulting from the lineup because the lineup itself was unduly suggestive. Petitioner argues it was unduly suggestive because he was the only one wearing a jacket that matched the description of the jacket that was worn by one of the suspects. Mr. Means' testimony indicates that the jacket played an important role in his identification of Petitioner. On direct

examination, the following colloquy took place:

Q: Mr. Means, directing your attention to the time that you viewed the lineup at the Gary Indiana, Police Department, were you able to identify anyone in that lineup?

A: Yes.

Q: And who did you identify?

A: Mr. Stone.

Q: Lorenzo Stone?

A: Right.

Q: Is that the same Lorenzo Stone who is now in Court and who you identified earlier in these proceedings?

A: Yes.

Q: What—was he wearing anything in particular that struck your attention?

A: Yeah, jacket that he had on was—it was fur-trimmed jacket that is a little unordinary in color.

Q: And at what time did he have this jacket on, the lineup or when you saw him at Mona's Lounge?

A: Both times.

Q: Thank you. I have no further questions.

On cross exam:

Q: Did you give a description of anybody you say was involved in this matter?

A: General description, yes.

Q: Could you describe right now if you can firsthand knowledge of that description?

A: Uh—mainly it was the jacket and the general description, the build, you know, you know.

Q: Nothing specific that stuck out in your mind? Nothing specific about any of the individuals involved?

A: The jacket.

The Indiana Supreme Court found that Petitioner's lineup was not unduly suggestive and therefore any failure to object to it was harmless.

In the case at bar, there is no evidence in the record that police interfered with appellant's manner of dress when he appeared in the lineup. Although he was wearing a distinctive jacket and the identifying witness stated he [ (petitioner) ] was wearing a jacket of that description during the robbery, the witness was emphatic that he was identifying appellant by his facial appearance. We see nothing in this record which would justify declaring trial counsel ineffective for failure to raise this issue.

*Id.,* 587 N.E.2d at 674 (Ind.1992).

■ This court has great respect for the decisions of the Justices of the Indiana Supreme Court and historical facts may be presumed to be correct in the context of determining effective assistance of counsel under the Sixth Amendment. In other words, state court factual findings made in the course of deciding an ineffectiveness claim are subject to the presumption of correctness standard of 28 U.S.C. § 2254(d). *Galowski v. Murphy,* 891 F.2d 629, 635 (7th Cir.1989), *cert. denied,* 495 U.S. 921, 110 S.Ct. 1953, 109 L.Ed.2d 315 (1990). Section 2254(d) provides that "a determination after a hearing on the merits of a factual issue, made by a state court of competent jurisdiction ... shall be presumed to be correct" unless "the merits of the factual dispute were not resolved in the state court hearing." Therefore, under section 2254(d), the court must defer to the state court's findings regarding the underlying facts of who did what to whom, when, where, and why. *Weidner v. Thieret,* 866 F.2d 958, 961 (7th Cir.1989).

■ On the other hand, this court is obligated under *Miller v. Fenton,* 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985), to make an independent examination of the record. A state court's findings that counsel performed adequately and that any shortcomings in his representation did not prejudice the defendant's case are not findings of fact under section 2254(d), but are instead mixed questions of law and fact subject to independent review. *Kimmelman v. Morrison,* 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986); *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Balfour v. Haws,* 892 F.2d 556, 563 (7th Cir.1989). A federal district court must therefore make an independent examination of the state court record in order to deter-

mine whether counsel rendered effective assistance.

On the issue of ineffectiveness of counsel, the Seventh Circuit in *United States v. Grizales,* 859 F.2d 442 (7th Cir.1988), indicated:

The Supreme Court has instructed that in evaluating the performance of a trial attorney we are to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2054. Appellant "has a heavy burden in proving a claim of ineffectiveness of counsel." *Jarrett v. United States,* 822 F.2d 1438, 1441 (7th Cir.1987) (citing *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064). The Supreme Court has further cautioned appellate courts to resist the temptation to "second-guess" the actions of trial counsel after conviction. *Id.* It is clear that the performance of trial counsel should not be deemed constitutionally deficient merely because of a tactical decision made at trial that in hindsight appears not to have been the wisest choice. *See Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065; *United States v. Kennedy,* 797 F.2d 540, 543 (7th Cir.1986).

*See also Fagan v. Washington,* 942 F.2d 1155 (7th Cir.1991).

 The specific test in an ineffective assistance of counsel claim mandates a two part evaluation. First, petitioner must illustrate that counsel's performance fell below an objective standard of reasonableness. A petitioner must specify the particular acts or omissions precipitating the respective claim, in this case, a failure to object to an allegedly unduly suggestive line-up. Then this court must determine if "whether, in light of all the circumstances, the alleged failure to object was outside the wide range of professionally competent assistance." *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066. Second, petitioner must show how counsel's failure to meet a reasonableness standard of performance caused actual prejudice to the petitioner's case. *See Sullivan v. Fairman,* 819 F.2d 1382, 1390 (7th Cir.1987). In this case, petitioner must show that there is a reasonable probability that the result of the proceeding would have been different without the admission of Mr. Means' prior identification testimony. However, if petitioner can not meet the second part of the test, i.e. if he can not show prejudice, this court need not determine under the first part of the test if the attorney's performance was in fact deficient. *United States v. Slaughter,* 900 F.2d 1119, 1124–25 (7th Cir.1990).

There must be actual prejudice. Fundamentally, it is a so-called "but for" test. Initially, Petitioner would have to show that but for Mr. Mean's testimony, there was a reasonable probability that Petitioner would not have been convicted. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. However, the "but for" test has recently been modified by *Lockhart v. Fretwell,* —— U.S. ——, ——, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993). *Lockhart* clarifies the meaning of prejudice by requiring that the petitioner must demonstrate that counsel's errors are so serious as to deprive him of a trial so that the result is unfair or unreliable, not merely that the outcome would have been different. *See also, Mason v. Godinez,* 47 F.3d 852 (7th Cir. 1995). The record does not support such a finding of prejudice. Assuming without deciding that Mr. Mean's testimony was inadmissible because of an unduly suggestive line-up, this court is not convinced that the supposed error resulted in a proceeding that was rendered fundamentally unfair or unreliable. Moreover, this court does not believe that there was a reasonable probability that the outcome would have been different absent the alleged error. The jury had more than sufficient evidence to fairly determine Petitioner's involvement in the robbery. In addition to Petitioner's own confessions that clearly indicate he played an important role in the robbery, the jurors also had Elliot James' confession. Shortly after the robbery, Elliot James admitted that:

Lorenzo Stone came up with the idea to stick-up Mona's.... I saw that ... Lorenzo was the last one to leave [Mona's]. Lorenzo was saying to us 'I think I killed him, I think I killed him'. Lorenzo said that when he started to get the money, he saw that somebody pulled a gun and he

said that he didn't take no chances and he just fired. We talked about it ... and then I had check the guns and I saw that the only guns that were shot were the ones that Lorenzo and Bobo were holding.

(R. at 747–49, 657–58). Mr. James repeated the same basic story at his guilty plea hearing. If believed, Mr. James' statements and Petitioner's own admission provided the jury with sufficient evidence to sustain a conviction. *See, Ticey v. Peters,* 8 F.3d 498 (7th Cir.1993). (Holding that recanted out-of-court statements admitted as substantive evidence provided sufficient evidence of guilt to comport with due process.) This court finds nothing in this record that justifies finding trial counsel ineffective for failing to argue an unduly suggestive lineup.

## E. THE ADMISSION OF CO-DEFEN-DANT WILLIAM'S STATEMENTS

██ There was a co-defendant in this case by the name of Johnny Williams. He was tried with this petitioner but did not testify at trial. The claim is now made that the confrontation clause of the Sixth Amendment of the Constitution of the United States was violated. *See Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). There was also introduced into evidence a confession by the co-defendant Williams. This is not a joint confession, but a confession separately by one defendant being tried jointly with another defendant for the same crime.

On Petitioner's direct appeal the Indiana Supreme Court under Justice DeBruler reasoned that the admission of the Williams confession, edited version, in a joint trial was not reversible error under the law of Indiana. Justice DeBruler also rationalized the Sixth Amendment confrontation rights under *Bruton.* Thus, a unanimous Supreme Court of Indiana found that the values involved in *Bruton,* as important as they are, were not violated here. He, additionally, found that any admission of the same was harmless beyond a reasonable doubt. Petitioner argues that the evidence is insufficient to support a finding of "harmless error" under *Dudley v. Duckworth,* 854 F.2d 967 (7th Cir. 1988), *cert. denied,* 490 U.S. 1011, 109 S.Ct. 1655, 104 L.Ed.2d 169 (1989).

In *Dudley* the Seventh Circuit held that the state trial court committed constitutional error when it allowed a state's witness to testify to receiving anonymous phone threats the night before the trial. *Id.* at 972. In applying harmless error analysis, a divided court concluded that the evidence of guilt against Dudley was not overwhelming because the state's case primarily rested upon the testimony of two accomplices testifying in exchange for dismissal of charges and immunity. *Id.* The divided court found the accomplice testimony to be "inherently dubious" and thereby insufficient to render the constitutional error committed in that case harmless. *Id.* The divided court concluded "the evidence of [Dudley's] guilt was impressive but not overwhelming." *Id.* (*citing United States ex rel. Savory v. Lane,* 832 F.2d 1011, 1020 (7th Cir.1987)). Judge Coffey disagreed and thought the evidence was sufficient even under *Savory v. Lane, supra,*. He wrote "I would not hesitate to affirm Dudley's conviction as the evidence of his guilt was 'overwhelming,' *United States ex rel. Savory v. Lane,* 832 F.2d 1011, 1020 (7th Cir.1987), and any trial court error in admitting that testimony was 'harmless beyond a reasonable doubt.' *Chapman v. California,* 386 U.S. 18 [87 S.Ct. 824, 17 L.Ed.2d 705] (1967)." Importantly, upon reflection, the court later concluded that their harmless error analysis in *Dudley* was unnecessary. *Thompkins v. Cohen,* 965 F.2d 330, 333–34 (7th Cir.1992); *Gomez v. Ahitow,* 29 F.3d 1128 (7th Cir.1994); *See also, U.S. v. Scott,* 47 F.3d 904 (7th Cir.1995).

Here, the state's case against the petitioner is not dependent merely upon the testimony of two accomplices testifying in exchange for a grant of immunity. First, there is no evidence of any immunity granted to either James or Williams. Although James's sentence may have been less than he might have received had he not plead guilty, clearly both James and Williams were held responsible for their deeds (R. at 48, 140–1). Secondly, their testimony is corroborated by an independent witness and by Petitioner's confession that he participated in the robbery and fired at least one shot. Given the current formulation of harmless error by the Su-

preme Court in *Brecht v. Abrahamson*, 944 F.2d 1363 (7th Cir.1991), *cert. granted in part*, —— U.S. ——, 112 S.Ct. 2937, 119 L.Ed.2d 563 (1992), *aff'd*, —— U.S. ——, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), and the above reasoning, the decision of the Indiana Supreme Court as to the admission of Williams' statements is clearly a correct one.

## F. JURY INSTRUCTION

■■ An instruction was given by the state trial court regarding mens rea in the robbery conviction. That instruction read:

Murder in the perpetration of a robbery as set forth in Count II of the indictment is defined by Statute in Indiana in pertinent part as follows:

Whoever kills a human being while perpetrating or attempting to perpetrate robbery is guilty of Murder in the First Degree and, on conviction, shall be imprisoned in the State Prison during life.

(R. at 117).

Petitioner continues to maintain that the above instruction failed to define a mental state or intent element in the definition of robbery and thus denied him due process of law. He cites *Screws v. United States*, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945) as supporting his argument. Petitioner's reliance upon *Screws* is misplaced. *Screws* was concerned with the conduct of local law enforcement under the legislatively created Federal Civil Rights Act. In that case local law enforcement officers allowed and participated in the beating death of a black prisoner, thus criminally denying him his civil rights. The Federal government brought charges under § 2 of the Civil Rights Act and obtained a conviction. The Supreme Court reversed and held that the statute required a "willful" violation. Informing the jury that the defendants had a generally bad purpose in beating their prisoner was insufficient; to convict, the jury had to find that the defendants "had the purpose to deprive the prisoner of a constitutional right, e.g. the right to be tried by a court rather than by ordeal." *Id.* at 107, 65 S.Ct. at 1038.

In this case, the jury merely had to find that in robbing Mona's, the defendants (including Petitioner) had the purpose to deprive Mona's employees and patrons of their property by force or threat of force. The Civil Rights Act is a complicated and sophisticated law designed to prevent and discourage local and state resistance to the social and political advancement of minorities. The *Screws* court recognized the complexity of the Civil Rights Act and issued instructions on how jurors were to apply it. Robbery, on the other hand, is a simple crime and the need to instruct a jury on subtle distinctions, if in fact there are any, is not pressing. The instruction given is itself sufficient to convey to the jury that the act must be intentional. Clearly, the jury discerned that intent was part of the formula because they found Petitioner guilty of *premeditated* murder. The Court simply withheld sentence upon the premeditated murder count and entered sentence upon the felony murder count. Finally, instructional error will support federal habeas relief only if "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," *Cupp v. Naughten*, 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). There was no objection to the instruction at trial, and upon review the given instruction found favor with the Supreme Court of Indiana. *Stone*, 587 N.E.2d at 675. No reversible error under Indiana law was involved in the giving of that instruction, nor did it so infect the entire trial that Petitioner's conviction was obtained in violation of due process.

## G. GENERAL INEFFECTIVE ASSISTANCE OF COUNSEL

### POST–CONVICTION

■■ Under *Pennsylvania v. Finley*, 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987), the petitioner can not assert an ineffective assistance of counsel claim based on a postconviction action. *See also, Prihoda v. McCaughtry*, 910 F.2d 1379, 1386 (7th Cir. 1990) (Factually, very similar to petitioner's present case). In this regard, Petitioner's claim is without merit.

### GENERALLY.

Until Petitioner's attorney filed his August 22, 1994 Traverse, this court was faced with a

*pro se* ineffective counsel claim that was non-specific and was at best, "inartfully draft" (Traverse at 3). This court has examined the specific issues raised by Petitioner's counsel in respect to ineffective assistance of counsel and has found them to be without merit under § 2254. Moreover, this court has also examined counsel's conduct throughout the entire trial and appellate process. To reiterate, the Supreme Court instructs that in evaluating the performance of a trial attorney this court is to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. Petitioner "has a heavy burden in proving a claim of ineffectiveness of counsel." *Jarrett v. United States,* 822 F.2d 1438, 1441 (7th Cir.1987) (citing *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064). Finally, this court is not to "second-guess" the actions of trial counsel.[5] Apart from the specific findings mentioned above, the record in this case supports no finding of an ineffective assistance of counsel.

## V. CONCLUSION

This court has carefully considered the record in this case. This court has examined thousands of habeas petitions and must confess that this case is a very close call. However, this court can say without grave doubt that the record here tilts ever so slightly against this Petitioner.[6] Thus, his petition for habeas corpus is hereby formally **DENIED.** The clerk is directed to enter judgement accordingly.

**IT IS SO ORDERED.**

---

**5.** *See also Hockett v. Duckworth,* 999 F.2d 1160 (7th Cir.1993), *Biggerstaff v. Clark,* 999 F.2d 1153 (1993), *Fagan v. Washington,* 942 F.2d 1155 (7th Cir.1991), *D.S.A. v. Circuit Court Branch 1,* 942 F.2d 1143 (7th Cir.1991), *cert. denied,* 502 U.S. 1104, 112 S.Ct. 1196, 117 L.Ed.2d 436 (1992), *United States ex rel. Simmons v. Gramley,* 915 F.2d 1128 (7th Cir.1990), *Page v. United States,* 884 F.2d 300 (7th Cir.1989), *United States v. Adamo,* 882 F.2d 1218 (7th Cir.1989), *United States ex rel. Thomas v. O'Leary,* 856 F.2d 1011 (7th Cir.1988), *Buelow v. Dickey,* 847 F.2d 420

(7th Cir.1988), *cert. denied,* 489 U.S. 1032, 109 S.Ct. 1168, 103 L.Ed.2d 227 (1989), *United States v. Queen,* 847 F.2d 346 (7th Cir.1988), *United States v. Gerrity,* 804 F.2d 1330 (7th Cir.1986), and *United States v. Liefer,* 778 F.2d 1236 (7th Cir.1985). *But see Clark v. Duckworth,* 770 F.Supp. 1316 (N.D.Ind.1991).

**6.** *O'Neal v. McAninch,* —— U.S. ——, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995).